(No. 34958.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARDING BAKER, Plaintiff in Error.

*Opinion filed March 20, 1959—Rehearing denied May 19, 1959.*

EUCLID LOUIS TAYLOR, and HOWARD T. SAVAGE, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago,

(Fred G. Leach, William H. South, Francis X. Riley, and James J. Glasser, of counsel,) for the People.

Mr. Chief Justice Daily delivered the opinion of the court:

An indictment returned to the criminal court of Cook County charged Harding Baker, Aaron Holmes, Clarence H. Smith, Joe Taylor, and Eli Snyder with the theft of 15,000 pounds of steel belonging to A. M. Castle & Company, a corporation. Except for Snyder, who was a scrap metal dealer, all of those charged were employees of the corporation and worked in or about a warehouse where steel was stored. Baker, hereinafter referred to as defendant, was given a separate jury trial which culminated in a verdict that he was guilty of larceny of steel having a value of $13,000. Judgment was entered on the verdict and defendant was sentenced to imprisonment in the penitentiary for an indeterminate term of from five to ten years. He prosecutes this writ of error.

Undisputed proof shows that a 5,324-pound shipment of stainless steel disappeared from the Castle warehouse between September 14 and October 5, 1956. An inventory followed and revealed that, in all, some 17,000 pounds of steel of various types were missing. The shipment of stainless steel included in the loss had been in a crate, was in sheet form, was easily identified through distinctive markings, and a portion of it was located by the Castle company a month later in a Chicago polishing mill. The mill, it appears, had received the crate of stainless steel on October 3, 1956, from Snyder Iron and Steel Company, also referred to in the record as the Snyder Junk Yard, which was operated by Eli Snyder. Documentary evidence, in turn, discloses that Snyder gave Joe Taylor a receipt for 14,760 pounds of steel on September 21, 1956, and, on the same date, issued three checks to Taylor in amounts

of $613, $610.20 and $558. Taylor was arrested and signed a written statement which led to the arrest of the defendant, Holmes and Smith. Defendant at all times denied that he was implicated in the taking of the steel from the Castle company but his indictment and trial followed shortly.

The principal witness against defendant was Joe Taylor, the fellow-employee and confessed accomplice, whose testimony was that he had participated in the crime only after defendant had threatened to expose to their employer that he, Taylor, had a criminal record. In this regard Taylor's examination by the prosecution was prefaced by an admission that he had been convicted of larceny of some clothing in the State of Mississippi, and that he had served a term of three years for that offense. According to Taylor, defendant proposed the theft from their employer during a conversation with the witness, Holmes and Smith, stating he knew where he could sell some steel and make some easy money, and the four men thereafter agreed to take some steel on the night when Taylor, Holmes and Smith would be working. Detailing the events of that night, Taylor testified that defendant came to the warehouse around 3:00 A.M. with a truck, described as "a red truck with built up sides," and departed after it had been loaded with steel by defendant, Holmes and Smith. At approximately 4:30 A.M., according to Taylor, Smith received a phone call and left his work after telling Taylor that it was defendant who had called, that the truck had broken down, and that defendant wanted Smith to bring the latter's car. Taylor next saw Smith at 6:30 A.M. when he returned to the warehouse, and a half hour later, at quitting time, the two men joined defendant at the scene of the disabled truck. It was Taylor's testimony that the truck body was sitting on the wheels and that the rear tires appeared to be cut and damaged.

Leaving Taylor with the stalled vehicle, defendant and Smith set out to find other transportation, and defendant, accompanied by two men unknown to Taylor, returned at 10:30 A.M. with a second "small red truck." After unloading some of the steel onto the second truck the men drove both vehicles to the Snyder junk yard. There, by Taylor's version, defendant talked alone with Snyder and, when the latter said he could not pay in cash, defendant asked the witness if it would be all right if a check was made out in the witness's name. Taylor agreed and Snyder thereafter gave him a receipt for 14,760 pounds of steel and, to facilitate cashing, three checks totalling $1,781.20. Further testifying, Taylor stated that he cashed the checks at two different currency exchanges, that the unknown owner of the second truck was paid off, that he and defendant then went to 51st and Wentworth streets where they paid a man named Burks $100 for the use and damage to the first truck, and that the balance of the proceeds were divided between himself, defendant, Holmes and Smith, the latter two each receiving $255 and the former $525 each.

Apart from the documentary proof contained in the receipt and checks referred to, Taylor's testimony received partial corroboration from other witnesses for the prosecution. Hamp Burks, the operator of a service station located at 51st and Wentworth streets, testified that he owned a ton-and-a-half truck with tall sides, an open top, a red cab and a gray body, and that defendant had been a customer of the station for two years. About two or three days before September 21, 1956, defendant inquired if he could rent the truck and was assured that he could "when he got ready." Burks related that the truck was gone from the station when he opened for business at 8:00 A.M. September 21, and that he did not see it until that afternoon when defendant, accompanied by Taylor, drove it into the station. Burks disclaimed any knowledge of what the truck

had been used for and stated that Taylor, whom he had not seen before that day, paid him $100 for rental and tire damage. Burton Kohn, the yard foreman at the Snyder junk yard, testified that he had seen defendant, Taylor and two other men at the junk yard for several hours on September 21, 1956. On cross-examination he stated he remembered the occasion and the identity of the men, inasmuch as the yard was usually visited only by the same peddlers every day.

Defendant testified in his own behalf and specifically denied each incriminating facet of Taylor's testimony; he did not, however, refute the testimony of Burks in any manner. Additionally, he gave much testimony designed to show his own good character and to cast doubt on the character of Taylor. In the latter respect he represented that Taylor had displayed animosity toward him for a period of a year after a quarrel at work, that Taylor was jealous of his better position and pay, that he had asked for and received a transfer from the place where Taylor worked because the latter was "picking on him," and that Taylor had on one occasion given him a piece of cake which made him sick and caused him to suspect that Taylor had poisoned him. Other witnesses for the defense testified to defendant's good reputation for honesty and integrity, and Clavell Turner, another Castle employee, recounted a conversation with Taylor eight months before the theft in which the latter purportedly said "it was silly for employees to take things from the company" and that "if he were going to take something, it would be something worth while."

It is the defendant's first contention that he was not proved guilty beyond a reasonable doubt because the only evidence against him was the "substantially uncorroborated" testimony of an accomplice who was an ex-convict, who was himself charged with the same crime for which the defendant was being tried, and who hoped for leniency in

exchange for his testimony. Even if we could agree that there was no substantive corroboration, defendant's contention would fail. As is more fully detailed in *People* v. *Hermens,* 5 Ill.2d 277, 285, and *People* v. *Nitti,* 8 Ill.2d 136, 138, this jurisdiction has always followed the common-law rule that the uncorroborated testimony of an alleged accomplice is sufficient to convict if it satisfies a jury beyond a reasonable doubt. At the same time, however, we have recognized that such testimony is not of the most satisfactory character and that it is attended with suspicion and infirmities which require utmost caution when it is the sole evidence of guilt. Such factors, in turn, go to the weight of the evidence and the credibility of the witnesses, questions which are primarily and peculiarly within the province of the jury. Accordingly, if a jury, in its superior position to appraise a witness, is satisfied by the testimony of an accomplice, its verdict will not be disturbed by a court of review unless it is plainly apparent that the accused was not proved guilty beyond a reasonable doubt.

In this case the jury was aware that Taylor was an ex-convict, was informed that he had confessed to and was indicted for the same crime, was fully instructed that it should give consideration to Taylor's hope of reward, immunity or benefit, and was thus fully cognizant of the suspicions which could attend his testimony. Considering the entire record, we cannot say that the jury's verdict was unjustified or incorrect. While it has been observed in such cases that the testimony of an accused is entitled to as much weight as that of an accomplice, (*People* v. *Harvey,* 321 Ill. 361,) it is also the rule that material corroboration of the testimony of either is entitled to great weight. (*People* v. *Hermens,* 5 Ill.2d 277; *People* v. *Durand,* 321 Ill. 526.) Here there was corroboration of Taylor's testimony by other witnesses which points to defendant's guilt and, conversely, there were no facts or circumstances shown which would lend credence to defendant's denial of guilt.

The testimony of the witness Kohn placed the defendant and Taylor in the Snyder junk yard on the morning the stolen steel was delivered there. More important, however, is the uncontradicted evidence which shows that defendant made the arrangements and himself returned to Hamp Burks the truck that was employed to remove the steel from the Castle premises. We are satisfied that defendant's guilt was established beyond a reasonable doubt.

Consistent with the view that testimony of an accomplice is to be looked upon with caution, and, for the purpose of permitting the jury to know and consider the influences under which the testimony was given, we have held that great latitude is to be permitted in the cross-examination of an accomplice, (*People* v. *Derrico,* 409 Ill. 453,) and that a defendant may properly inquire into any motives that may have influenced an accomplice to offer himself as a witness in behalf of the prosecution. (*People* v. *McKinney,* 267 Ill. 454; *Stevens* v. *People,* 215 Ill. 593; *People* v. *Maggio,* 324 Ill. 516.) In the cases last cited it was held error for the court to refuse cross-examination designed to show whether an accomplice had been promised leniency or immunity from punishment, and it is defendant's contention that the same error occurred in the present case when the court deprived him of the right to question Taylor concerning the latter's expectation or hope for leniency. We do not find, however, that such a denial occurred. Insofar as can be ascertained from the brief and abstract presented, defendant, without objection from the prosecution or interference from the court, interrogated Taylor concerning the status of his own trial and culminated the series of questions with an inquiry as to "whether or not he expected to get probation." After stating that he did not know if his attorney had talked to the State's Attorney "with respect to what would happen to me in my case," Taylor stated: "I do not know what will happen insofar as the sentence to be imposed upon

me or whether or not I will get probation." On the state of the record, therefore, there is little or no basis for the present contention that defendant was deprived of the right to explore the possibility that Taylor's testimony had been motivated by hopes for leniency. Moreover, it appears that the jury was made fully aware of such a motive by other portions of the record. When being qualified as a witness for the prosecution, Taylor testified he had pleaded guilty to the theft, that he had not yet been sentenced, that he would be sentenced at a future date, and that he had not received any promises in return for his testimony. Considering both the cross-examination and the direct examination, it is apparent that the jury was in fact fully put on notice that Taylor's testimony was to be examined in light of hopes for leniency, and that defendant was not deprived of a fair trial in this respect.

During a discussion between court and counsel precipitated by Taylor's reply that he did not know what would happen to him, the court stated it was not interested in the witness's frame of mind, and it is now insisted by defendant that the remark had the effect of removing any question of Taylor's hopes for leniency from the consideration of the jury. While we may agree that the remark was incorrect, in view of the rule set forth in the *McKinney*, *Stevens* and *Maggio* cases, we do not find that it had the effect claimed. The fact remains that the evidence already in the record was not altered, and we note the jury was instructed that Taylor was an accomplice if he took part in the commission of the crime, that it should consider the influence under which the testimony of an accomplice was given, and that it should consider "whether the purpose of the witness is to shield himself from punishment, [or] to obtain some benefit for himself."

The next contention advanced by defendant is that the court erred when it permitted the accomplice, Taylor, to testify that he had confessed to his participation in the crime

for which defendant was being tried. No attempt was made to introduce Taylor's confession in evidence, nor did he testify that it implicated the defendant. (See: *Neighbours* v. *State*, 121 Ohio St. 525, 169 N.E. 839.) Thus the rule relied upon by defendant, namely that confessions of a codefendant cannot be admitted in evidence against a defendant who was not a party to the confession, has no application. In the light of Taylor's testimony, which fully and freely admitted his own guilt to the jury, we see no error or undue prejudice to defendant in permitting him to testify that he had confessed to the crime. This is particularly true since the jury was instructed that, on the trial of defendant, it was not to take into consideration the guilt or innocence of codefendants not on trial.

Further trial errors assigned, but argued only briefly, are that the court permitted hearsay evidence, that it permitted improper redirect examination of the accomplice, and that the State's Attorney made improper remarks to the jury. We have examined these contentions thoroughly and see no useful purpose in setting them forth in detail. Suffice it to say that the law permits each act or declaration of conspirators to be proved against all, (*People* v. *Pierce*, 387 Ill. 608; *People* v. *Levy*, 351 Ill. 110,) that the scope and manner of the redirect examination did not exceed cross-examination, (*People* v. *Allen*, 368 Ill. 368,) and that the remarks of the prosecutor, being based upon competent and pertinent evidence, did not transcend legitimate argument. *People* v. *Drury*, 250 Ill. App. 547, affirmed 335 Ill. 539.

Finally, defendant contends the court erred in refusing him a new trial on the basis of newly discovered evidence tending to establish that Taylor did in fact expect to gain some benefit in exchange for his testimony against the defendant. A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge and denial thereof will not be disturbed

374

upon review in the absence of a showing of an abuse of discretion. (*United States* v. *Jakalski,* (7th cir.) 237 F.2d 503.) To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. (*People* v. *Holtzman,* 1 Ill.2d 562; *People* v. *Harrison,* 359 Ill. 295.) Pertinent facts in the instant case show that one of defendant's counsel visited Taylor in the penitentiary and obtained his signature on an affidavit which set forth that certain officials of the State's Attorney's staff had in fact promised Taylor probation in exchange for his testimony. However, when a motion for a new trial was heard upon the basis of this allegedly new evidence, cross-examination of Taylor made it apparent that he was not completely familiar with the contents of the affidavit, and he completely refuted its allegations by testifying that he had told the truth regarding promises made to him when he testified before the jury. We conclude that the trial court committed neither error nor an abuse of discretion in refusing to grant a new trial.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*