THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE CALLAWAY, Defendant-Appellant.

Fourth District   No. 4—88—0622

Opinion filed June 30, 1989.—Rehearing denied July 27, 1989.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and James Overholt, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial, defendant was convicted of nine counts of narcotics-related offenses. Seven counts involved the unlawful delivery of small amounts of cocaine. Because defendant's illegal activities overlapped a change in the statute pertaining to unlawful delivery of cocaine, five counts were in violation of section 401(c) of the Illinois Controlled Substances Act (Ill. Rev. Stat., 1986 Supp., ch. 56½, par. 1401(c)) (Class 2 felony), and two counts were in violation of section 401(b)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)) (Class 1 felony). Defendant was also convicted of one count of unlawful delivery of cannabis, in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)) (Class 3 felony), and one count of narcotics racketeering, in violation of section 4(a) of the Narcotics Profit Forfeiture Act (Ill. Rev. Stat. 1987, ch. 56½, pars. 1654(a), 1655(a)) (Class 1 felony). The circuit court of Adams County sentenced defendant to the following concurrent terms of imprisonment: (a) four years for the Class 3 felony; (b) five years for the Class 2 felonies; and (c) eight years for the Class 1 felonies. In addition, defendant was ordered to pay fines. Defendant appeals his convictions and sentences.

On appeal, defendant raises the following allegations of error: (1) the court erred in allowing the State to adduce and argue that the drug dealers defendant supplied with drugs pleaded guilty or were convicted by a jury of the same offenses for which defendant was now on trial; (2) the court should have vacated the eight convictions for unlawful delivery of cocaine and cannabis because these predicate convictions for unlawful delivery of narcotics are included offenses of narcotics racketeering; (3) the trial court abused its discretion in denying defendant's motion for severance of the charges; and (4) the prosecutor committed error during his open statement and closing argument. The pertinent facts follow.

The State charged defendant with operating a scheme whereby he profited from the sale of illegal drugs, and from acting as an informant for law enforcement authorities concerning the same drug sales. In so doing, defendant allegedly deceived friends of his into selling narcotics for him, and deceived undercover law officers into believing the friends were notorious drug dealers. The scheme was not discovered until defendant had fled to Texas.

The scheme took the following pattern. Defendant would ask a friend to sell drugs to a third person, usually described by defendant as his cousin from out of town. Each testified defendant told him he did not want his cousin to know he was a dealer. Defendant supplied the drugs and returned after the sale to collect the money, between $100 and $300 per transaction. In the meantime, defendant had made arrangements with local narcotics investigators to act as an informant concerning illegal drug sales. The individual purporting to be defendant's cousin was, in fact, an undercover law officer. For each drug transaction arranged by defendant, he would receive a fee from the government of $35 to $50, depending on the type of drug involved. The incidents in question took place during the months of January and February 1987. Five of defendant's friends were later arrested and pleaded guilty, or were convicted by a jury of selling illegal narcotics.

Defendant was eventually arrested and indicted for his participation in these same drug transactions. Following trial, defendant was convicted of eight counts of unlawful delivery of narcotics and one count of narcotics racketeering.

■ Defendant first argues the State improperly introduced evidence that the principal witnesses, the friends of defendant set up to be drug dealers, pleaded guilty or were convicted of the same offenses for which defendant was on trial. Further, defendant contends the State's Attorney referred to this evidence as a reason for finding defendant guilty in closing argument. The State responds by arguing the circumstances of this case are unique and do not fit under the normal prohibition against evidence of a codefendant's conviction.

In total, five of defendant's friends testified that defendant set them up as drug dealers. The jury acquitted defendant of the charges pertaining to one of the individuals, and his testimony will not be discussed. The direct examination of three of the remaining four witnesses was conducted in similar fashion. The pertinent testimony of Kimberly West Page is reproduced as an example:

"Q. Okay. Do you have some felony convictions?

A. Yes.

Q. And can you tell the ladies and gentlemen what those are?

A. Two counts of controlled substance.

Q. Okay, and is that controlled substance cocaine?

A. Yes.

Q. Do you know the person who gave you the drugs that you were convicted for?

A. Yes.

Q. And who was that person?

A. Joe Callaway.

Q. Is he here in the courtroom?

A. Yes.

Q. Would you point him out for us, please.

\* \* \*

Q. The two convictions that you have for selling drugs, did the first one occur on or about January 20th of 1987?

A. Yes, it did.

Q. How did you happen to sell drugs on January 20th of 1987?

A. Joe came over about 3:00, 3:30 and asked me if I would sell something for him to his cousin, which was Gerald Kempf.

Q. Did you know that the name—of the name Gerald Kempf at that time?

A. No. I knew him as his cousin.

Q. You didn't know that he was a state police officer?

A. No, I did not.

Q. Okay. What did Mr. Callaway tell you to do?

A. He came to the house and dropped the stuff off and told me that it was $150 and that he would be back in a little bit with his cousin because he didn't want his cousin knowing he was dealing drugs."

Each witness then went on to describe the drug transactions in detail: how defendant arranged them; how they occurred; and how defendant returned afterwards for his money.

The testimony of Beth Alexander Owens differed in that she did not plead guilty. She went to trial and was convicted on one count of unlawful delivery of cocaine. She was originally charged with three counts of narcotics violations: two counts of unlawful delivery of cocaine and one count of narcotics racketeering. In her testimony, Owens described two incidents where defendant arranged for her to sell cocaine to Sergeant Gerald Kempf. In the first instance, defendant promised her $25 for selling the cocaine for him. However, when defendant returned following the transaction, he did not leave her any money. Owens stated this was the count for which she was not convicted. The implication was that she was not convicted because she did not receive any money. In the second instance, she demanded a portion of the money be paid to her prior to the sale. In total, she received $25 from defendant for her part in this transaction. She was convicted on this count.

The State's Attorney mentioned the testimony of Owens in his closing argument. In particular, the State's Attorney argued the following with regard to Owens' jury trial:

"Going back just a second to Beth Alexander Owens. Remember how she testified that she had a jury trial and that she was found not guilty on Count I and that was the count that she didn't get any money for? She was found guilty on Count II, and that was the count that she wanted her money up front, so she clearly knew what she was doing. She got money for the transaction. She knew it was cocaine. Count III she was found not guilty on. That was narcotics racketeering. Well, as you will see, the definition of narcotics racketeering requires two or more transactions, and since she was only found guilty of one transaction, it only follows that she will be found not guilty of narcotics racketeering.

That brings up another point. You might think, well, if she is not guilty of Count I because she didn't get any money out of it, then why is the Defendant, Joe Callaway, guilty? Well, the Judge will also help you out with that because there is another instruction that says that when you are an accomplice or legally accountable for another—and, again, this is not the exact words—but it goes on to say it doesn't matter whether the other person was found guilty or not guilty or not charged or not prosecuted. So the fact that Beth Owens was found not guilty of her Count I, which in this case turns out to be Count X against Joe Callaway, that is not a basis for finding him not guilty of that count. As a matter of fact, it is a basis for finding him guilty. I submit the reason she was found not guilty is she didn't get any money out of it.

MR. ADRIAN: Objection, your Honor.

THE COURT: Sustained."

Evidence that a codefendant or accomplice has pleaded guilty or has been convicted of the same offense is inadmissible at trial for purposes of proving the guilt of a defendant. However, such evidence is admissible for impeachment purposes. (*People v. Sullivan* (1978), 72 Ill. 2d 36, 42, 377 N.E.2d 17, 20.) Defendant argues the instant case is similar to the facts in *Sullivan*, and that reversible error occurred because of the introduction of the accomplice's convictions and the closing argument of the State's Attorney.

In *Sullivan*, defendant was on trial for an armed robbery committed by three men. The two other codefendants had pleaded guilty. The prosecutor called both codefendants and attempted to have them tes-

tify concerning the crime. This was largely unsuccessful. The prosecutor did, however, emphasize the convictions of the codefendants in opening and closing arguments. In opening argument, the prosecutor stated:

> " 'We also, I believe, will have the opportunity of hearing from the other two convicted armed robbers in this same instance, Clarence Armstrong and Albert Matthews, as to their being brought here this afternoon to testify what they know about Mr. Sullivan's participation in this act.' " (*Sullivan*, 72 Ill. 2d at 39, 377 N.E.2d at 19.)

In closing argument, the prosecutor stated:

> " '[Defendant], just as Mr. Matthews did and just as Mr. Armstrong had a part in it, they all had their own individual role to play in this armed robbery.
>
> Now, what about those two others? They both pleaded guilty to the same charge. They're both in Menard. They both were brought up here today, as you could tell, rather reluctantly. They were called to the stand and didn't want to testify, particularly Mr. Matthews. ***
>
> \* \* \*
>
> Now, if you think [defendant] was innocent, why was he with those two guys that are in prison now who pled guilty to armed robbery?
>
> \* \* \*
>
> Now, common sense will tell you, reason will tell you that [defendant is] just as guilty as the other two, because he was in there. He had the money.
>
> \* \* \*
>
> [A]lthough it's a circumstantial case you can't help but find that he's guilty of armed robbery, just like his two friends, in spite of their effort to help him by their reticence and their code of honor whatever you want to call it.' " (*Sullivan*, 72 Ill. 2d at 40, 377 N.E.2d at 19.)

Later, in his rebuttal argument, the prosecutor added:

> " '[Defendant is] really clever. He's been around, and he's dangerous, he's just as guilty of armed robbery as any of the other two that have already pled guilty.' " (*Sullivan*, 72 Ill. 2d at 41, 377 N.E.2d at 19.)

The supreme court found the prosecutor's closing argument extremely prejudicial and reversed the defendant's conviction.

In response, the State argues the instant case is a unique factual situation which does not fit within the general prohibition found in

*Sullivan.* The State argues this case is more similar to the facts in *People v. Baker* (1959), 16 Ill. 2d 364, 158 N.E.2d 1, a case distinguished by the supreme court in *Sullivan.* In *Baker*, the codefendant was the State's primary witness and testified at length concerning the crime. He also testified that he had previously confessed to the crime, had pleaded guilty, and was awaiting sentencing. On appeal, the defendant argued the admission of testimony that the codefendant confessed was prejudicial. However, the court found no error because the confession itself was not admitted and the codefendant did not testify that the confession implicated defendant. Further, there was no prejudice concerning the fact of the confession because the codefendant fully testified concerning the crime, including the codefendant's participation. (*Baker*, 16 Ill. 2d at 372-73, 158 N.E.2d at 6.) The State argues the instant case is similar to *Baker* in that four accomplices described their full and complete participation in the drug transactions.

■ We believe the facts in this case present a unique scenario not contemplated within the general prohibition against evidence of a codefendant's conviction. While each accomplice testified to a conviction for unlawful delivery, each also gave complete statements concerning the transactions, including details of defendant's participation. The factual situation was unique in that the witnesses alleged defendant set them up to be convicted by arranging for sales to undercover police officers. Once the transactions were complete, defendant abandoned his so-called friends to their fate, which for these individuals meant criminal convictions for unlawful delivery of narcotics. In their testimony, these convicted drug dealers were simply testifying as to the identity of their drug supplier. The jury was entitled to know the full extent of defendant's scheme.

The closing argument of the State's Attorney was not outrageous like that of the prosecutor in *Sullivan.* We find no reversible error in the closing argument.

■ Defendant next argues the eight convictions for specific, illegal narcotics sales should have been vacated as they were included offenses of narcotics racketeering. Defendant was convicted of nine narcotics related offenses. He was convicted of seven counts of unlawful delivery of cocaine and one count of unlawful delivery of cannabis. The ninth conviction was for narcotics racketeering. Section 4(a) of the Narcotics Profit Forfeiture Act (Act) (Ill. Rev. Stat. 1987, ch. 56½, par. 1654(a)) defines the particular racketeering offense for which defendant was convicted:

"A person commits narcotics racketeering when he:

(a) Receives income knowing such income to be derived, directly or indirectly, from a pattern of narcotics activity in which he participated, or for which he is accountable under Section 5—2 of the Criminal Code of 1961."

"Pattern of narcotics activity" is defined in section 3(b) of the Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1653(b)):

" 'Pattern of narcotics activity' means 2 or more acts of narcotics activity of which at least 2 such acts were committed within 5 years of each other. At least one of those acts of narcotics activity must have been committed after the effective date of this Act and at least one of such acts shall be or shall have been punishable as a Class X, Class 1 or Class 2 felony."

Count XII of the indictment charged defendant with narcotics racketeering. The charge was based on all of the other specific narcotics violations for which defendant was on trial. In addition, the jury was instructed that in order to find defendant guilty of narcotics racketeering, they must find him guilty of two or more of the other narcotics charges. Defendant was acquitted on counts VIII and IX, and the State dismissed count V. Therefore, defendant was convicted of eight counts of unlawful delivery of illegal narcotics.

Defendant argues that based on the manner in which count XII was pleaded, and the evidence used to support the charge, the eight unlawful delivery convictions were included offenses of the narcotics racketeering charge. Multiple convictions must be vacated in two instances: (1) when they are based on the same physical act, or (2) when one is an included offense of the other. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45; *People v. Wieland* (1984), 123 Ill. App. 3d 576, 584, 462 N.E.2d 1256, 1262.) Section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 2—9) defines an included offense, and states, in part:

" 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged."

In *People v. Mays* (1982), 91 Ill. 2d 251, 255, 437 N.E.2d 633, 635, the supreme court stated that one of the approved tests for determining whether a particular offense is an included offense of another is to examine the greater crime as it is alleged in the indictment. Because the charge of narcotics racketeering specifically relied on the other charged offenses for support, defendant argues the other eight narcotics violations are included offenses.

In response, the State relies on the interpretation given by the

Federal courts to the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C.A. §§1961 through 1968 (West 1984 & Supp. 1989)). There is evidence that the Illinois legislature patterned the Act (Ill. Rev. Stat. 1987, ch. 56½, pars. 1651 through 1660) after the Federal RICO statute. (See 82d Ill. Gen. Assem., House Proceedings, May 20, 1982, at 326 (statements of Representative Daniels).) In particular, the State cites to two Federal cases where the courts found narcotics-related offenses different from RICO-based offenses such that separate convictions and sentences were permissible. *United States v. Thomas* (2d Cir. 1985), 757 F.2d 1359; *United States v. Boldin* (11th Cir. 1985), 772 F.2d 719.

In *Thomas*, the court of appeals held that the Federal offense of conspiracy to violate narcotics laws (see 21 U.S.C.A. §846 (West Supp. 1989)) was not an included offense of conspiracy to violate the RICO statute. The court applied a three-step test in order to arrive at its conclusion. (*Thomas*, 757 F.2d at 1371.) In step one, the court examined the language of these statutory provisions. The offenses were located in two different statutes, each statute unambiguously authorizing punishment for violation of its terms. Under this portion of the test, the court noted the Federal statutes were intended to deter two different kinds of activity: narcotics violations on the one hand, and racketeering on the other. The second step of the analysis involved a close examination of the elements of the two offenses in question:

> "In order to ascertain whether the offenses in question are in fact separate [citations], we turn to the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932):
>
> > The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Id.* at 304, 52 S. Ct. at 182." (*Thomas*, 757 F.2d at 1371.)

In applying this test, the court noted that it was examining the language of the statute, and not the specific allegations made against the defendants. The court then examined the two different statutes and found one element in each that was distinct:

> "A [RICO] conspiracy requires proof of the existence of an 'enterprise' engaged in a 'pattern of racketeering activity'; a Section 846 conspiracy does not. Section 846 requires proof of a narcotics related conspiracy; a RICO conspiracy charge is satisfied by proof of an agreement to commit a felony, no proof of

conspiracy to commit narcotics violations is necessary. Thus, each offense requires proof of a fact that the other does not, and the *Blockburger* test is satisfied." (*Thomas*, 757 F.2d at 1371.)

The third step of the test was to examine the legislative history in order to determine if there was any indication that Congress did not intend to impose multiple punishments for the two separate offenses. Because the legislative history was silent on the matter, the court found there was no contrary indication.

In *Boldin*, the second Federal case, the court of appeals held that the Federal offense of possession with intent to distribute (21 U.S.C.A. §841(a)(1) (West 1981)) was not an included offense of a substantive RICO violation. The court applied the same three-step test used in *Thomas*. Under step two of the test, which utilizes the *Blockburger* rule, the court simply concluded "the two groups of offenses are sufficiently different and distinguishable." (*Boldin*, 772 F.2d at 729.) Based on *Thomas* and *Boldin*, the State argues the concept of an included offense does not apply to the instant case. The State particularly emphasizes the purposes of the statutes involved. The unlawful delivery offenses are aimed at deterring specific narcotics violations. The narcotics racketeering statute is aimed at deterring racketeering activities.

■■ A serious question arises as to whether the analysis used by the Federal courts should be adopted in the instant case. In *Mays*, our supreme court discussed the methods of determining whether one offense is an included offense of another:

> "The definition of 'included offense' does not indicate which of the following is determinative in deciding if a particular offense is an included offense of another: the abstract statutory definition of the greater crime; the greater crime as it is alleged in the indictment or other charging document; or the greater crime as its necessary elements are proved at trial. In *People v. Cramer* [(1981), 85 Ill. 2d 92, 421 N.E.2d 189,] this court recently approved the use of the second test, while at the same time pointing out that the first test was seldom used and expressing no opinion on the propriety of the third test." (*Mays*, 91 Ill. 2d at 255, 437 N.E.2d at 635.)

The court in *Mays* then found that the result would be the same in that case using any of the three tests. Similarly, we conclude that using any of the three tests to examine the instant case, the result is the same. The unlawful delivery offenses are included offenses of narcotics racketeering.

The Federal analysis was based on an examination of the general language of the pertinent statutes. This is the first test under *Mays*. However, we note that the court of appeals in *Thomas* made the critical distinction based on the conspiracy language, and not the language of the substantive offenses. An examination of the language of the Act leads to the conclusion that other narcotics offenses are included offenses. Narcotics racketeering occurs when an individual derives income "from a pattern of narcotics activity." (Ill. Rev. Stat. 1987, ch. 56½, par. 1654(a).) "Pattern of narcotics activity" is defined as "2 or more acts of narcotics activity." (Ill. Rev. Stat. 1987, ch. 56½, par. 1653(b).) "Narcotics activity" is defined, in pertinent part, as "[a]ny conduct punishable as a felony under the Cannabis Control Act or the Illinois Controlled Substances Act." (Ill. Rev. Stat. 1987, ch. 56½, par. 1653(a)(1).) Therefore, by definition, all of the elements of unlawful delivery of illegal narcotics are included within the offense of narcotics racketeering.

We reach the same result under the second and third tests described in *Mays*. The narcotics racketeering charge as pleaded in the indictment encompassed all of the elements of the unlawful delivery charges. The evidence used to prove the unlawful delivery charges constituted the evidence used to prove the narcotics racketeering charge. Because of our conclusion here, we vacate the seven convictions for unlawful delivery of cocaine and the conviction for unlawful delivery of cannabis, along with the corresponding sentences. Defendant retains a conviction and sentence for narcotics racketeering.

■ Defendant's third argument is that the trial court abused its discretion in denying his motion for severance of the charges. Defendant filed a pretrial motion requesting separate trials on the charges against him. The court denied the motion. A decision on whether or not to sever is a matter within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. (*People v. Mikel* (1979), 73 Ill. App. 3d 21, 27, 391 N.E.2d 550, 555.) The charge of narcotics racketeering was based on the other counts of specific narcotics transactions. Thus, all of the evidence was relevant to prove defendant engaged in "a pattern of narcotics activity." (Ill. Rev. Stat. 1987, ch. 56½, par. 1654(a).) The trial court did not abuse its discretion in denying defendant's motion to sever.

■ Finally, defendant argues the State's Attorney made other serious errors in his opening statement and closing argument. However, defendant failed to properly object to these alleged errors, and he has, therefore, failed to preserve these errors for review. (*People v. Carraro* (1979), 77 Ill. 2d 75, 81, 394 N.E.2d 1194, 1196-97.) We find

these arguments waived.

For the reasons stated above, the order of the circuit court of Adams County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

McCULLOUGH, P.J., and GREEN, J., concur.