No. 2--99--1060

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE 0F THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS ) of McHenry County

)

                                )

Plaintiff-Appellee, ) Nos. 89--CF--916 

                                ) 90--CF--451

)

v.                              )

)

ROBERT M. PINKONSLY,            ) Honorable

  ) Ward S. Arnold and

) Susan Fayette Hutchinson,

Defendant-Appellant
.
 ) 
Judges, Presiding.
 
            

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court: 

Defendant, Robert M. Pinkonsly, appeals from the trial court’s order denying his petition to reduce sentence.  We affirm in part and vacate in part.

In August 1991, defendant was convicted of two counts of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)) and one count of narcotics racketeering (Ill. Rev. Stat. 1989, ch. 56½, par. 1654(a)) and was sentenced to three concurrent terms of 30 years' imprisonment in the Department of Corrections.  This court affirmed defendant’s conviction in 
People v. Pinkonsly
, No. 2--91--1093 (1993) (unpublished order under Supreme Court Rule 23).  In December 1997, defendant filed a 
pro se
 petition for relief from judgment pursuant to section 2--1401 of the Civil Practice Law (735 ILCS 5/2--1401 (West 1998)).  Appointed counsel filed an amended petition to reduce sentence in August 1999. The trial court denied the amended petition on September 9, 1999.  This appeal followed.

Section 2--1401 provides a method of obtaining relief from a judgment after more than 30 days have elapsed.  
People v. Madej
, 193 Ill. 2d 395, 399-400 (2000).  A petition brought under section 2--1401 must be filed "not later than 2 years after the entry of the order or judgment."  735 ILCS 5/2--1401 (West 1998).
  Relief sought more than two years after the entry of the judgment will not normally be considered absent a clear showing that the petitioner was under a legal disability or duress or that the grounds for relief were fraudulently concealed.  
People v. Harvey
, 196 Ill. 2d 444, 447 (2001).
  However, this two-year limitations period may be waived by the opposing party.  
Harvey
, 196 Ill. 2d at 447.

Here, the initial petition was filed more than six years after defendant was sentenced and almost five years after the mandate of this court issued in the direct appeal.  The State argues that the petition should be considered untimely and the trial court’s denial of the petition should be upheld on that basis.  However, the State never raised the limitations period below.  Therefore, we conclude that the State has waived the issue of timeliness, and we will not consider that argument on appeal. 

Defendant first contends that he received the ineffective assistance from counsel at the sentencing, appeal, and petition stages of this case because none of the attorneys raised certain sentencing issues.  However, the ineffectiveness of counsel is not appropriate for review in a proceeding under section 2--1401. 
People v. Smith
, 176 Ill. App. 3d 132, 136 (1988); 
People v. Anderson
, 31 Ill. 2d 262, 264 (1964).  Thus, any arguments regarding the effectiveness of counsel at the sentencing and appeal stages were not appropriately raised in the section 2--1401 petition and will not be considered here. 

However, we must address defendant’s contention that counsel appointed to assist him with his section 2--1401 petition was ineffective.  To successfully allege the ineffective assistance of counsel, a defendant must demonstrate that (1) counsel’s performance was deficient in that counsel made such serious errors that counsel was not operating as the counsel guaranteed by the sixth amendment to the United States Constitution (U.S. Const., amend. VI), and (2) counsel’s deficient performance substantially prejudiced the defendant in that it is reasonably probable that the result of the proceeding would have been different but for counsel’s unprofessional errors.  
People v. Flores
, 153 Ill. 2d 264, 283 (1992).  Where the ineffectiveness claim can be disposed of on the ground that the defendant did not suffer sufficient prejudice, a court need not determine if counsel provided less than reasonably effective assistance.  
Flores
, 153 Ill. 2d at 283-84. Defendant contends that he received the ineffective assistance because counsel did not raise in the petition the argument that the charges of unlawful delivery of a controlled substance were lesser- included offenses of narcotics racketeering and, that, therefore, the convictions of those charges should have been vacated. 

Multiple convictions and concurrent sentences cannot stand where a defendant commits multiple acts and is convicted of multiple offenses, some of which are, by definition, lesser- included offenses.  See 
People v. King
, 66 Ill. 2d 551, 566 (1977). In such an instance, sentence should be imposed on the more serious offense, and conviction on the less serious offense should be vacated.  
People v. Milton
, 309 Ill. App. 3d 863, 868 (1999). Whether an offense encompasses a lesser-included offense is a matter of law to be reviewed 
de novo
.  
People v. Landwer
, 166 Ill. 2d 475, 486 (1995).

Section 2--9 of the Criminal Code of 1961 defines an included offense, in pertinent part, as an offense that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged."  Ill. Rev. Stat. 1989, ch. 38, par. 2--9(a) (now 720 ILCS 5/2--9 (West 1998)).  Our supreme court has adopted the "charging instrument" approach to determine whether an offense is a lesser-included offense.  See 
People v. McLaurin
, 184 Ill. 2d 58, 104 (1998).  
The charging instrument approach looks to the facts alleged in the charging instrument in identifying a lesser-included offense.  Under this approach, an offense is deemed to be a lesser-included offense if the instrument charging the greater offense sets out the main outline of the included offense.   
McLaurin
, 184 Ill. 2d at 104-05.  

The indictment for narcotics racketeering charges:

"That between the dates of December 4, 1989 and December 12, 1989, in McHenry County, State of Illinois, [defendant] committed the offense of Narcotics Racketeering, in that the said defendant received income knowing that such income was derived directly from a pattern of narcotics activity in which he participated, in violation of Ch. 56 ½, Section 1654(a) of the Illinois Revised Statutes [now 725 ILCS 175/4(a) (West 1998)]."  

Under the Narcotics Profit Forfeiture Act (the Act), "Pattern of narcotics activity" is defined as "2 or more acts of narcotics activity of which at least 2 such acts were committed within 5 years of each other.  At least one of those acts of narcotics activity must have been committed after the effective date of this Act and at least one of such acts [of narcotics activity] shall be or shall have been punishable as a Class X, Class 1 or Class 2 felony."  Ill. Rev. Stat. 1989, ch. 56½, par. 1653(a)(2) (now 725 ILCS 175/3(b) (West 1998)).  "Narcotics activity" is defined as "conduct punishable as a felony under the Cannabis Control Act or Illinois Controlled Substances Act."   Ill. Rev. Stat. 1989, ch. 56½, par. 1653(a)(1) (now 725 ILCS 175/3(a) (West 1998)).  Count I of the indictment charged "[t]hat on or about December 4, 1989, in McHenry County, State of Illinois, [defendant] committed the offense of unlawful delivery of controlled substance, in that said defendant knowingly and unlawfully delivered *** cocaine" in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56, par. 1401(a)(2) (now 720 ILCS 570/401(a)(2)(A) (West 1998)) (between 15 and 100 grams of cocaine). Count II contained the same allegations as count I except that the date was December 12, 1989.

   The narcotics racketeering count contained an allegation that defendant participated in a pattern of narcotics activity.  That allegation necessarily implied that defendant committed two Class 2, 1, or X felonies under the Cannabis Control Act (Ill. Rev. Stat. 1989, ch. 56½, par. 701 
et seq.
 (now 720 ILCS 550/1 
et seq.
 (West 1998))) or the Illinois Controlled Substances Act.  Counts I and II alleged that defendant committed two Class X felonies under the Illinois Controlled Substances Act.  Accordingly, the statutory elements of narcotics racketeering were implicitly contained in the unlawful-delivery-of-cocaine counts, a fact that renders the unlawful-delivery-of-cocaine counts lesser-included offenses.  See 
People v. Callaway
 185 Ill. App. 3d 136 (1989)
.  Thus, the convictions of and sentences for both counts of unlawful delivery of a controlled substance must be vacated.

Our analysis here is supported by 
Callaway
,
 
185 Ill. App. 3d 136,
 in which the Appellate Court, Fourth District,
 found that charges of unlawful delivery of illegal narcotics were lesser-included offenses of narcotics racketeering. In 
Callaway
, the defendant was convicted of seven counts of unlawful delivery of cocaine, one count of unlawful delivery of cannabis, and narcotics racketeering.  All of the delivery charges, which were the basis for the racketeering charge, were Class 1, 2 or 3 felonies.  
Using the charging instrument approach, the appellate court concluded that "all of the elements of unlawful delivery of illegal narcotics are included within the offense of narcotics racketeering." 
Callaway
, 185 Ill. App. 3d at 147.  Therefore, the court vacated all of the unlawful delivery convictions and sentences.

We recognize that, unlike 
Callaway
, the included offenses here, the unlawful delivery of between 15 and 100 grams of cocaine, are classified as more serious offenses; the unlawful delivery offenses are classified as Class X felonies, while the narcotics racketeering offense is classified as a Class 1 felony.  However, that does not mean that all of the convictions and sentences can stand.  See 
People v. Smith
, 295 Ill. App. 3d 405 (1998) (the Appellate Court, Fifth District, vacated a Class X possession of a controlled substance (cocaine) with intent to deliver, stating that it was a lesser-included offense of narcotics racketeering). 
Therefore, in the case before us, counsel was ineffective for failing to raise this issue in the section 2--1401 petition, as defendant would have prevailed on the issue.
  Thus, the convictions of and sentences for unlawful delivery must be vacated and the conviction of and sentence for narcotics racketeering must stand.

The dissent cites to 
People v. Bryant
, 128 Ill. 2d 448 (1989) (
Bryant II
), to support its determination that the Class X felony is a separate offense rather than a lesser-included offense.  Slip op. at 13-14.  The dissent concludes that through a scheme of penalties the legislature did not intend that a Class X delivery is a lesser-included offense of narcotics racketeering.  The dissent  disregards that the issue in 
Bryant
 was that of disproportionate penalties and not that of multiple convictions based on lesser-included offenses.  The dissent misrepresents the 
Bryant
 decision when it states that our supreme court in 
Bryant
 departed from the "strict adherence to the charging instrument approach" to determine whether multiple convictions were based on lesser- and greater-included offenses.  Slip op. at 14
.  
The Bryant court makes no mention of the charging instrument approach because the Bryant court did not have a factual issue relating to a charging instrument before it
.  The issue raised in 
Bryant
 was that of disproportionate penalties, and the court confined its analysis to disproportionality because the facts were limited to that issue.  The theft offense, which was the basis of Byrant's argument, was not charged.  
Bryant
, 128 Ill. 2d at 456.  Thus, the 
Bryant
 court compared the elements of the offenses at issue, but abstractly.  Here, we decide whether defendant was improperly convicted of multiple offenses based on the same conduct of defendant.  In these situations, the charging instrument approach is the only valid analysis.  See 
People v. Novak
, 163 Ill. 2d 93, 112 (1994).   The dissent ignores the fact that our supreme court has repeatedly and consistently reaffirmed its preference for the charging instrument approach over the abstract elements approach in identifying lesser-included offenses when discussing the prohibition against multiple convictions.  See, 
e.g.
, 
People v. McLaurin
, 184 Ill. 2d 58, 104-05 (1998); 
People v. Hamilton
, 179 Ill. 2d 319, 326-27 (1997); 
Novak
, 163 Ill. 2d 93, 112 (1994)
.  In 
Novak
, the court explained that it preferred the charging instrument approach because:

"This approach tempers harsh mechanical theory with the facts of a particular case.  The charging instrument approach results in a broader range of possible lesser included offenses, based on the allegations in the charging instrument.  This supports the goal of more accurately conforming punishment to the crime actually committed.  Further, since the charging instrument  provides to the parties a closed set of facts, both sides have notice of all possible lesser included offenses and can plan their trial strategies accordingly."  
Novak
, 163 Ill. 2d at 113.

Since 
Novak
, there has been no doubt that, in cases not involving disproportionate penalties, the charging instrument approach is the only proper way to identify lesser-included offenses.  Therefore, 
Bryant
 is not applicable here, legally or factually.  Further, our failure to apply the disproportionate penalties analysis is not "ironic," as the dissent states. Slip op. at 15.  Both the State and defendant in this case recognize that an examination of the charging instruments is the proper approach here.  The parties do not raise the issue of disproportionate penalties, and we see no reason to raise it 
sua sponte
, particularly when 
Bryant
 is both factually and legally distinct from the case before us.

Defendant also argues that counsel was ineffective because she failed to argue that defendant was improperly sentenced to an extended term of 30 years' imprisonment on the narcotics racketeering conviction.
  Narcotics racketeering, as a Class 1 felony, is punishable by a term in prison of 4 to 15 years.  See Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--1 (now 730 ILCS 5/5--8--1(a)(4) (West 1998)).  If the court finds it appropriate, a defendant may be sentenced to an extended term of up to 30 years' incarceration.  See Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--2 (now 730 ILCS 5/5--8--2(b)(3)
 (West 1998)).

A trial court may impose an extended term for a felony conviction if the defendant has been previously convicted in Illinois of the same or greater class felony, the conviction has occurred within 10 years of the prior conviction, and the charges
 
arose out of different series of acts and were separately brought and charged.  See Ill. Rev. Stat. 1989, ch. 38, par. 1005--5--3.2(b)(1) (now 730 ILCS 5/5--5--3.2(b)(1)
 (West 1998)).
  

A trial court must set forth on the record its consideration of the requisite aggravating factors in imposing an extended-term sentence.  
People v. Wilson
, 303 Ill. App. 3d 1035, 1046 (1999).
  
However, the court need not recite or assign a value to each fact it used as a basis for the sentence.  The absence of specific findings will not result in a remand where the sentence is justified by the record.  
People v. Pugh
, 325 Ill. App. 336, 347 (2001).  

Here, the record indicates the basis of the extended-term sentence.  During the sentencing hearing, the State made reference to a Class 1 felony conviction of "possession with intent to deliver" in May 1989.  Although the trial court did not state that this was the basis for the imposition of an extended term, we can presume that this is the basis for the sentence, since this factor was presented to the court.  See 
People v. Watkins
, 325 Ill. App. 3d 13, 21 (2001).  Unlike 
People v. McGhee
, 238 Ill. App. 3d 864 (1992),  cited by defendant, the aggravating factor in this case has a basis in the record.  In 
McGhee
, the factor that could have applied, that of wanton cruelty, was expressly rejected by the trial court.  Thus, 
McGhee
 is not applicable here.  Since defendant cannot
 
establish that he was prejudiced by counsel's failure to raise this issue, we affirm defendant's extended-term sentence of 30 years' imprisonment for narcotics racketeering.

The judgment of the circuit court of McHenry County is affirmed in part and vacated in part
.

Affirmed in part and vacated in part.

BOWMAN, J., concurs.

JUSTICE O’MALLEY, dissenting:

The majority never expressly addresses the fundamental question presented by this case, 
i.e.
, are predicate offenses lesser-included offenses?  

I find instructive the case of 
Garrett v. United States
, 471 U.S. 773, 85 L. Ed. 2d 764, 105 S. Ct. 2407 (1985).  In 
Garrett
, the defendant was charged with, among other things, engaging in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. section 848.  Among the predicate acts that the government used to prove the CCE offense was a prior conviction of importation of marijuana.  

While the Court ultimately did not reach a conclusion regarding whether the importation offense was a lesser-included offense of CCE, the Court had "serious doubts" regarding that proposition.  
Garrett
, 471 U.S. at 790, 85 L. Ed. 2d at 779
, 105 S. Ct. at 2417.  The Court described the conduct alleged in the CCE charge (which stretched over a period of 5½ years) as "multilayered conduct, both as to time and to place."  
Garrett
, 471 U.S. at 789, 85 L. Ed. at 778
, 105 S. Ct. at 2416.  This conduct was contrasted to that in 
Brown v. Ohio
, 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977), which dealt with the "classic relation" of the lesser-included and greater offenses of joyriding and auto theft, respectively.  While the defendant in 
Brown
 committed both offenses simultaneously "[e]very minute" that he possessed the stolen vehicle, Garrett’s charge involved "wholly separate" incidents of drug smuggling.  
Garrett
, 471 U.S. at 787-89, 85 L. Ed. 2d at 777-78, 105 S. Ct. at 2416.

I similarly find defendant’s conduct in this case to be multilayered and not susceptible to the "classic relationship" of lesser-included and greater offenses.  The unlawful delivery charges were separate events, occurring eight days apart.  I acknowledge that eight days is considerably less than the 5½ years involved in 
Garrett
 and that the offenses in this case took place at the same location, whereas the offenses in 
Garrett
 were nationwide in scope. However, while the offenses were not as multilayered as to time and place, they were separate events and were not simultaneous offenses, as in 
Brown
.  I also note that the Act provides a five-year time frame in which at least two of the offenses forming the "pattern of narcotics activity" must occur in order to bring a charge of narcotics racketeering.  See Ill. Rev. Stat. 1989, ch. 56½, par. 1653(b).  Clearly, the Act was designed to encompass the same types of multilayered activities as those in 
Garrett
.  While the delivery charges are predicate acts of the racketeering charge, the multilayered nature of the racketeering charge precludes the usual application of the lesser-included analysis.
  As the Supreme Court had "serious doubts" that such activities were lesser-included offenses, I conclude that the predicate offenses that form the "pattern of narcotics activity" are not lesser-included offenses of narcotics racketeering. 

More specifically to the facts of this case, I disagree with the majority’s conclusion that the Class X delivery charges could be lesser-included offenses of a Class 1 offense. To support its conclusion, the majority relies on 
People v. Callaway
, 185 Ill. App. 3d 136 (1989), in which the Appellate Court, Fourth District
, found that charges of unlawful delivery of illegal narcotics were lesser-included offenses of narcotics racketeering.  While acknowledging that we are presented with a factual situation different from that of 
Callaway
, in that the delivery charges in 
Callaway
 were all Class 1, 2, or 3 felonies, while the deliveries in this case were Class X, the majority fails to tell us why that difference makes no difference.  Instead, the majority cites to the unpublished portion of 
People v. Smith
, 295 Ill. App. 3d 405 (1998), to support its conclusion that a Class X felony, punishable by a term of imprisonment of 6 to 30 years, is a "lesser" included offense of a Class 1 felony, punishable by imprisonment of 4 to 15 years. Slip op. at 7. 

The majority and the 
Callaway
 court rely on the charging instrument approach to conclude that unlawful delivery is a lesser-included offense of narcotics racketeering.  While our supreme court has adopted this approach, the court has departed from the strict application of the charging instrument approach when it has determined that the legislative intent, specifically in regard to sentencing provisions, so required.  See 
People v. Bryant
, 128 Ill. 2d 448 (1989).

In 
Bryant
, our supreme court looked to the statutory scheme created by the legislature to determine that the offense of possession of a stolen motor vehicle (PSMV) (Ill. Rev. Stat. 1985, ch. 95½, par. 4--103) was not a lesser-included offense of theft (Ill. Rev. Stat. 1985, ch. 38, par. 16--1).  The court noted that PSMV was a Class 4 felony when enacted in 1977.  Through the years, the penalty for that offense had been increased by the legislature until it was made a Class 2 felony in 1985.  Theft was classified as a Class 3 felony throughout the relevant period.  Departing from strict adherence to the charging instrument approach, the court held that, while PSMV may have been considered a lesser-included offense of theft under prior statutory schemes, the steady increase in the penalty for PSMV was "indicative of the legislature’s intent to make possession of a stolen motor vehicle a separate, more serious offense than theft, rather than a lesser included offense of theft."  
Bryant
, 128 Ill. 2d at 457.

In 1973, the General Assembly created a statutory scheme of sentencing in which, with the exception of murder, felonies were classified as Class 1, 2, 3, or 4.  See Ill. Rev. Stat. 1973, ch. 38, par. 1005--5--1.  With the exception of murder, Class 1 felonies carried the most severe penalties, and the penalties decreased in Classes 2, 3, and 4.  See Ill. Rev. Stat. 1973, ch. 38, par. 1005--8--1.  At that time, unlawful delivery of 30 or more grams of cocaine was classified as a Class 1 felony; delivery of less than 30 grams was classified as  Class 2.  See Ill. Rev. Stat. 1973, ch. 56½, pars. 1401, 1402.  In 1979, the legislature added the felony classification of Class X, which carried harsher penalties than even Class 1.  See Ill. Rev. Stat. 1979, ch. 38, pars. 1005--5--1, 1005--8--1.  The delivery of 30 or more grams of cocaine, among other deliveries of controlled substances, was re-classified as a Class X felony.  See Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).  It was not until 1982 that the legislature created the Class 1 felony of narcotics racketeering.  See Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1651 
et seq.
  While narcotics racketeering has remained a Class 1 felony and the potential imprisonment for its violation has remained constant, the amount of cocaine necessary for a Class X charge of unlawful delivery was decreased to 15 grams (see Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)), and the term of imprisonment was increased for deliveries in excess of 100 grams (see Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1 (subsequently renumbered as par. 1401.2)).  The General Assembly has chosen to make the delivery of between 15 and 100 grams of cocaine a Class X felony, while it has made the later-enacted narcotics racketeering a Class 1 felony.  This scheme is indicative of the legislature’s intent to make large-scale drug delivery a more serious offense than the receipt of income from multiple, smaller drug offenses, rather than a lesser-included offense.  Given this legislative history, I conclude that the legislature did not intend to include the Class X delivery of a controlled substance as a lesser-included offense of Class 1 narcotics racketeering.   

I find it ironic, given the majority’s emphasis on the "disproportionate penalties" analysis in 
Bryant
, that the majority fails to address that very issue as it affects this case and potentially countless other cases involving Class X narcotics
 
defendants.  For example, consider a defendant who engaged in the same conduct as our defendant except for the racketeering, or who either was not charged with racketeering or mounted a successful defense to that charge.  Is he also entitled to a vacation of his
 
Class X conviction and sentence?  If not, he may spend twice as long (15 additional years) in prison as a consequence of 
less
 egregious criminal conduct or of his successful defense of the racketeering charge.  Our supreme court has concluded that the Illinois Constitution would be violated if the penalty for an offense is not as great or greater than the penalty for a less serious offense.  See  
People v. Wisslead
, 94 Ill. 2d 190, 196 (1983).  Applying 
Wisslead
 to the majority’s lesser-included analysis must result in a finding that "lesser" Class X narcotics deliveries are unconstitutionally punished more severely than "greater" Class 1 narcotics racketeering charges.  I cannot presume that the legislature intended such an absurd, unconstitutional result.  See 
People v. Steppan
, 105 Ill. 2d 310, 316 (1985).  

Also left unaddressed in the majority opinion is the situation in which one or both of the underlying offenses forming the pattern of narcotics activity has already resulted in a conviction.  The statute includes no requirement that the underlying offenses be offenses of which the defendant has not been previously convicted.  In such an instance, a defendant could have served a sentence on one or both of the "lesser-included" offenses before being sentenced on the narcotics racketeering charge.  Such a defendant would, theoretically, serve a greater sentence in aggregate than would defendant in this case (in the absence of his extended-term sentence), even if the underlying offenses were only Class 2 felonies.

Finally, I disagree with the majority’s conclusion that the unlawful delivery convictions and sentences must be vacated.  In general, where multiple convictions are based on multiple acts and some offenses are included offenses, only the conviction and sentence for the offense with the highest sentence may stand.  
People v. Lee
, 311 Ill. App. 3d 363, 372-73 (2000).  The rule against multiple convictions should inure to the State and not provide a windfall for defendants.  
Lee
, 311 Ill. App. 3d at 373.  The majority, however, has vacated the two Class X convictions, along with their undeniably proper 30-year sentences, and let stand the lesser Class 1 conviction.
  
While the majority has affirmed the extended-term sentence on that conviction, a subsequent review of that sentence by our supreme court may conclude differently and could still result in a reduction to a 15-year sentence.  Defendant has already received the windfall of a conviction of a lower category felony; the possibility of a double windfall remains alive.  Apparently, the additional work involved in investigating and prosecuting the second delivery was not only for naught but also was counterproductive.  The State would have been better served had it prosecuted defendant only for the first offense.  I cannot agree that this was the outcome that the legislature intended when it passed the Act, nor can I agree that a fair reading of statutory and case law allows such an outcome.