THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FELIX GONZALEZ, Defendant-Appellant.

First District (6th Division)   No. 1—90—0690

Opinion filed July 10, 1992.

Michael J. Pelletier and Manuel S. Serritos, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Susan Summers (Stuart), Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Defendant was convicted of attempted first degree murder, armed violence and three counts of aggravated battery. Defendant was sentenced to an extended term of 50 years on the attempted murder and not sentenced on the other charges. Defendant appealed, raising as issues: (1) whether defendant was denied a fair trial by admission into evidence of a letter defendant contended was wholly devoid of probative value and served only to mislead and distract the jury, (2) whether the circumstances of the offense were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty so as to qualify the defendant for the extended-term sentence; and (3) whether the sentencing court abused its discretion when it considered aggravating and mitigating factors.

Defendant was indicted for attempted first degree murder, armed violence and three counts of aggravated battery. A codefendant, Joseph Aponte, also was indicted on the same charges in a separate indictment. His case was severed before trial, he pled guilty and was sentenced to nine years in prison.

The trial judge denied defendant Gonzalez' pretrial motion *in limine* to bar admission of a letter allegedly written by defendant to Aponte while the two were in jail. The trial judge ordered that a redacted version of the letter be prepared for possible admission at trial. The letter appeared to advise Aponte that he should deny that defendant was involved in the shooting.

At trial, the shooting victim, Dennis Funches, testified that at approximately 3:50 p.m. on February 17, 1989, he went to a liquor store to buy candy with three friends. He testified that he and Raoul Diaz waited outside while Jeffrey Akins and Terry Agee went inside. Funches testified that a few minutes later, two men came out of the store and one man carried a bag. Funches identified defendant as the second man and stated that the first man handed the bag to defendant, who then pulled out a gun. Funches testified that defendant then shot him once from about two feet away after saying, "What's up, folks, GK." Funches admitted that he was a member of a street gang whose members refer to themselves as "folks" and that GK means "Gangster Killer."

He admitted that he considered defendant's gang an enemy. He denied that he had threatened defendant or flashed any gang signs in his direction.

Funches testified that he viewed the defendant for 30 seconds before the shooting. He testified that he was taken to the hospital and learned he had a bullet lodged in his spine. He testified that he identi-

fied defendant from a photo lineup while at the hospital and later in a physical lineup at the police station.

Jeffrey Akins, Funches' cousin, testified that when he went into the store he saw two men that he had never seen before. He stated that in the store defendant spoke the gang slogans "GK," "RK" and "DK." He testified that the man who came into the store with him was a member of a street gang. Akins testified that defendant told him, "When you all go outside I got something for you all." He testified that as the defendant and his companion left the store he saw the defendant take a gun from the other man, exit the store and shoot Funches, who was standing outside the store. He testified that defendant then shot Diaz, who was standing next to Funches, and the two assailants fled. He testified that he could see what was going on through a picture window in the store front.

Akins testified that he identified both the defendant and his companion for police. He testified that at the time of the shooting he was not a member of a gang but at the time of the trial he was a gang member. He testified that before the shooting he tried to warn Funches and Diaz by knocking on the store window but he was too late.

Elizabeth Rosario, the mother of defendant's child, testified that between 2:30 and 3:30 p.m. on February 17, 1989, she asked defendant to buy some laundry detergent for her. She testified that she gave defendant $5, and that she went to the laundromat. She testified that sometime later she heard that a shooting had occurred at the store across the street.

She testified that defendant had written many letters to her and that he went by the nickname of "Little Man." She identified the handwriting in the redacted letter, discussed before trial, as having been written by defendant.

Roberto Almododar, a sales clerk at the liquor store, testified that defendant came into his store with a friend to buy laundry detergent at approximately 3:45 p.m. on February 17, 1989. He testified that the two men had a little argument with two other men and he heard someone say, "Let's take it outside." He testified that he saw the defendant's companion pass a gun to the defendant as they walked out the door and then defendant shot a black man who had remained outside. He testified that he had seen defendant in the store on two or three other occasions.

Four Chicago police officers testified about the action that led up to Aponte's arrest at the scene. They testified with regard to defendant's arrest four months later and the witnesses' identifications of both defendant and Aponte through photo displays and physical

lineups. One officer testified that defendant admitted to him that his nickname was "Little Man."

A corrections officer testified that a letter was found in Aponte's jail cell in October 1989. The record contains the letter, dated August 29, 1988, and a photocopy of the redacted version which includes the same text read to the jury at trial. The record is unclear as to whether the jury saw the physical copy of the letter; however, the jury was read this redacted portion of the letter:

"Brother Bugs. Well, Brother may the blessing of the Almighty Ray. Be with you. Bugs, how you doing over there? *** Whatever you do, don't say shit to your PD about me because he's probably going to try to fuck me up. And it ain't going on. If he ask you about me, you tell him that I was nowhere in the vicinity where the shit happened. He's going to try to make you say that I was the gunner so you could get less time. But when he does, you tell that son of a bitch it ain't going on. Because if the victim doesn't show, we got it beat out. And we will go to the crib by law. So, be cool and be patient. *** All for now Amor Brother. See you in court[.] Amor De La Whipple [and] Wabansia. Love, Little Man. Write back soon."

The parties stipulated that if Funches' surgeon were to testify he would state that Funches underwent six hours of surgery, had been shot at close range and now had a bullet lodged in his spine leaving Funches a paraplegic.

Another stipulation was entered that Akins admitted to police that he was a member of a street gang at the time of the shooting.

Ramon Herrara, who lived about 1½ blocks from the shooting, testified for the defense. He testified that he had hired defendant to do drywall work on his basement on the day of the shooting. He testified that when he returned to his home at approximately 3:30 p.m. he found defendant "still working on the basement" and that by 6 p.m. defendant had done "quite a bit" of work.

The jury found defendant guilty of attempted first degree murder, armed violence, aggravated battery, aggravated battery involving use of a deadly weapon and aggravated battery involving permanent disability.

The trial judge heard arguments in aggravation and mitigation. The State requested an extended sentence and the defense asked for a sentence in the 6- to 30-year range provided by statute. The judge sentenced defendant to an extended term of 50 years for attempted murder.

First we consider whether defendant was denied a fair trial by admission into evidence of a letter defendant contends was wholly devoid of probative value and served only to mislead and distract the jury because it contained irrelevant and inflammatory remarks.

Defendant contends the trial court committed an egregious error when it denied defendant's request for an order *in limine* and when it admitted the letter found in Aponte's cell because (1) no foundation was laid for the time in which it was written, and (2) no nexus or relevance was offered connecting the letter to the crime alleged.

Defense counsel argued unsuccessfully before trial that the State offered no nexus, or connection, to explain what in the letter could be construed as connecting defendant to this crime, this court case or this charge.

Defendant concedes that the State is permitted to show a defendant's admission of guilt (*People v. Prante* (1986), 147 Ill. App. 3d 1039, 1061, 498 N.E. 2d 889) or to establish that defendant attempted to intimidate a witness. (*People v. Gambony* (1948), 402 Ill. 74, 80, 83 N.E. 2d 321.) But defendant contends that the letter does neither.

Defendant contends that admission of the letter, even in its redacted version, was highly prejudicial because of the references to gang affiliation and the widespread prejudice associated with street gangs in large cities. (*People v. Parrott* (1976), 40 Ill. App. 3d 328, 331, 352 N.E. 2d 299.) Defendant argues that even relevant evidence may be excluded where the probative value is substantially outweighed by the danger of unfair prejudice. *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 489, 485 N.E. 2d 1292.

Defendant contends the error was exacerbated because the jury was not instructed under Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (2d ed. 1981), to consider first whether defendant made the statement and then what weight to give the statement. Defendant concedes that he did not offer such instruction but argues that the failure to give this instruction can be reversible error if such a failure denies the defendant a fair trial. *People v. Brinson* (1980), 80 Ill. App. 3d 388, 394, 399 N.E. 2d 1010.

Defendant argues that admission of this prejudicial letter was error and cannot be considered harmless because in the State's closing argument, the prosecutor stated: "The defendant himself by this letter links himself to Jose Aponti [*sic*] and corroborates everything that you heard from all of the witnesses on the witness stand." Defendant argues that such a broadsweeping summary of the letter can neither be ignored by this court nor considered harmless.

The State contends that proper foundation was laid for the letter because defendant's girlfriend testified that she recognized defendant's handwriting and that defendant had sent her many letters. She also testified that defendant went by the nickname Little Man, and Officer Mancini testified that defendant himself admitted using the nickname.

The State argues that the nexus between the letter and the shooting of Funches was provided to the jury by the girlfriend's testimony about defendant's gang affiliation and by the testimony of Morris, the Department of Corrections officer who said he discovered the letter in Aponte's cell. When asked what condition the letter was in when he found it, Morris responded: "It was opened. Been about a month and a half old. And was among other letters that he had and paperwork that he had stashed under his mattress." Morris offered no explanation for his estimate on the age of the letter and defense counsel did not pursue this on cross-examination.

The State contends that the nexus was also provided by looking to the content of the letter which encouraged Aponte to tell "your P.D." that defendant was not in the area and that defendant was not the "gunner." The State does not otherwise address defense contentions that the letter clearly bore a 1988 date.

The State argues that the admission was properly admitted to infer guilt. (*People v. Olbrot* (1982), 106 Ill. App. 3d 367, 374, 435 N.E. 2d 1242.) Admission of such evidence is discretionary and will not be disturbed on review unless a clear abuse by the trial court is shown. *People v. Adams* (1962), 25 Ill. 2d 568, 573, 185 N.E. 2d 676.

Finally, the State argues that any error that occurred was harmless because of the overwhelming evidence presented against defendant. The victim testified that defendant shot him from two feet away. The victim picked defendant's photo out of a photo array and defendant out of a lineup. Akins and Almododar, the store clerk, testified that they saw defendant leave the store with a gun and shoot the victim.

The State argues that there was sufficient competent evidence establishing the defendant's guilt beyond a reasonable doubt, and it does not appear that the letter complained of was the basis for the jury's verdict. The State contends that therefore any error in admitting the redacted version of the letter was harmless and reversal is not required. *People v. Bolden* (1987), 152 Ill. App. 3d 631, 640, 504 N.E. 2d 835.

■ We agree that admission of the letter was error. The State did not provide adequate foundation for the letter both in light of the

1988 date on the letter and the lack of testimony that could link the statements in the letter to the crime for which defendant was charged. However, we find this error harmless in light of the overwhelming evidence of defendant's guilt provided by the eyewitness testimony of the victim, Akins and Almododar.

Next we consider whether the circumstances of the offense were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty so as to qualify the defendant for an extended-term sentence.

At defendant's sentencing the trial judge commented: "Well, I don't think there is any question that when you walk up next to an individual and you hold a gun at a very short distance, and then you pull the trigger, it's not heinous and brutal; no question it is."

After warning defendant to be prepared for a hard life in the penitentiary and reviewing the presentence investigation report, the trial judge stated: "I think *** it does call for an extended term. The defendant based upon the act here, based upon the fact he's been to the penitentiary before, based upon the fact that he walks the city streets, another guy carrying a gun, he takes the gun, shoots this individual. Now this individual is in a wheelchair the rest of his life. The defendant will be sentenced to the Illinois State Penitentiary for a period of 50 years."

Defendant was convicted of attempted murder, a crime which carries a 6- to 30-year sentence. (Ill. Rev. Stat. 1989, ch. 38, par. 8—4.) The statute provides that an extended sentence of 30 to 60 years can be imposed under certain conditions including when a defendant is convicted of a felony and the court finds defendant's conduct "exceptionally brutal or heinous." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(2).

Heinous has been defined as "hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal." Brutal has been defined as "grossly ruthless," "devoid of mercy or compassion: cruel and cold-blooded." *People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E. 2d 344.

Defendant relies primarily on *La Pointe* and *People v. Andrews* (1989), 132 Ill. 2d 451, 466-67, 548 N.E. 2d 1025, to support his contention that an extended sentence is not warranted. In *La Pointe* the Illinois Supreme Court found defendant's actions merited an extended sentence because the defendant, with a significant history of criminal activity, acted with premeditation and deliberation and showed no remorse when he decided to kill a cab driver. An hour or two before the killing, defendant had told an acquaintance that he planned to kill a

cab driver that day. (*La Pointe*, 88 Ill. 2d at 487.) In upholding defendant's sentence of natural life, the court focused on defendant's significant history of criminal activity, the premeditation and defendant's lack of remorse. *La Pointe*, 88 Ill. 2d at 501.

In *Andrews*, the defendant was convicted of killing a man in a car who had just pulled off a highway exit ramp. The supreme court found the extended sentence was unwarranted because the defendant was remorseful, had no history of crimes of violence, previously had been convicted of burglary and theft, and no evidence was presented that defendant gave a prior indication that he intended to kill. *Andrews*, 132 Ill. 2d at 466.

Defendant argues that an extended sentence is warranted only where deliberateness or premeditation is manifest but that neither factor exists here. Defendant notes that State witnesses testified that defendant entered the store to purchase laundry detergent and at that time he did not have a gun on his person. Defendant showed remorse before sentencing when he pledged to rehabilitate himself. He did not have a past criminal record that would permit the imposition of an extended sentence. Defendant also rejects the State's contention that defendant's gang affiliation is somehow an aggravating factor the court should consider when determining whether an extended sentence is appropriate.

The State, however, contends that an extended sentence is warranted and that the court in *La Pointe* found such a sentence was appropriate where the evidence establishes that defendant acted with cold-blooded deliberation in deciding to kill. The State contends defendant's deliberateness was shown in his exchange of gang slogans and symbols in the store, his taking of the gun from Aponte, his walking out of the store and his firing of the gun two feet away from the victim. The State contends that defendant's lack of sorrow or remorse for his actions was shown in his crude reference to the female assistant State's Attorney prosecuting him.

The State cites in support of its position primarily *La Pointe* and *People v. Nester* (1984), 123 Ill. App. 3d 501, 462 N.E. 2d 1011. *Nester* held that a single act which causes death or injury may be sufficient to demonstrate the existence of wanton cruelty. *Nester*, 123 Ill. App. 3d at 506.

This court utilizes an abuse of discretion standard of review in determining whether a sentence is excessive. (*Andrews*, 132 Ill. 2d at 464.) The trial court here noted it found the heinous and brutal conduct to be the close proximity in which the defendant shot the victim, leaving him paralyzed for the rest of his life.

■ We find the trial court failed to articulate appropriate reasons to support imposition of an extended-term sentence on defendant. Though defendant's conduct cannot be minimized, the extended sentence statute was not intended to be applied to all violent crimes (*Andrews*, 132 Ill. 2d at 466) but only to those where the defendant's conduct is exceptionally brutal or heinous. *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 670, 439 N.E. 2d 543.

The defendant had a legitimate reason for going to the store where the shooting occurred. No evidence was produced to show he had a gun in his possession when he arrived at the store. Defendant does not have a criminal history involving violence and expressed remorse before the trial judge at the time of his sentencing.

We find the trial court abused its discretion in imposing an extended sentence here and therefore reduce defendant's sentence to the maximum permissible term of 30 years for attempted murder (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(2)) under the authority given this court in Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)).

In summary, we affirm defendant's conviction for attempted first degree murder, armed violence and three counts of aggravated battery and we reverse defendant's 50-year sentence and reduce his sentence to 30 years.

Affirmed in part; reversed in part.

McNAMARA and RAKOWSKI, JJ., concur.