THIRD DIVISION

MARCH 03, 1999

No. 1-96-3655

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) 

)

LEROY WILSON, ) Honorable

) John D. Brady,

Defendant-Appellant. ) Judge Presiding.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial in September 1996, defendant, Leroy Wilson, was convicted of first degree murder (720 ILCS 5/9-1 (West 1994)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(3)(West 1994)), and received an extended-term of 80 years' imprisonment and a concurrent term of 30 years' imprisonment, respectively.  Defendant appeals, arguing (1) he was deprived of the right to a trial by an impartial jury; (2) he was denied the right to effective assistance of trial counsel; (3) his extended-term sentence for murder was an abuse of discretion; and (4) the legislation enacting the truth-in-

sentencing law is unconstitutional.  For the following reasons, we affirm defendant's convictions, but reduce and modify his sentence for murder.

I. BACKGROUND

During 
voir dire, 
the trial court initially addressed the prospective jurors as a group, which included Daniel Walter.  The court asked the venire, 
inter alia, 
whether they would be unable or unwilling to follow the law as they were instructed.  No veniremember responded affirmatively.  The court then explained that defendant was presumed innocent and that the State had the burden of proving his guilt for the charged offenses beyond a reasonable doubt.  The court additionally explained defendant was not required to prove "anything" in his own behalf.

During individual examination, the court noted Walter previously served as a juror in an unrelated civil trial.  The court asked Walter if he could set aside any information he learned in that case, and Walter stated he could.  Walter further assured the court he would decide defendant's case based upon the evidence and law presented.

When asked by the court if any member of his family or a friend was either a law enforcement official, a lawyer, or a judge, Walter indicated he had three friends who serve as police officers.  Walter acknowledged he occasionally discussed with the officers the cases in which they were involved.  The court asked Walter if "there [was] anything about [those relationships] that would affect [his] ability to be fair and impartial in [defendant's] case."  Walter
 stated "yes."  Walter did not explain his response, and the court did not ask additional questions.

Walter also indicated his brother-in-law is an attorney for the Fraternal Order of Police.  The court asked Walter if "there [was] anything about [that relationship] that would affect [his] ability to give both sides a fair trial in [defendant's] case," and Walter responded "yes."  Walter did not explain his answer, and the court did not inquire further.

Walter lastly noted he was acquainted with a circuit court judge.  When questioned about this relationship, Walter assured the court it would not affect his impartiality.  The court concluded by asking Walter if "there [was] anything that [it had] not touched upon that would affect [his] ability to give both sides a fair trial."  Walter answered "no".

The record shows defense counsel neither questioned Walter himself nor asked the trial court to conduct further 
voir dire.  
Without objection, Walter was sworn as a juror, and ultimately served as jury foreperson at defendant's trial.

At trial, the State's evidence established that on February 7, 1996, at about 2:40 a.m., Michael Edwards and Christopher Hill were walking north on the 5600 block of South King Drive in Chicago to a gas station located at 55th Street and King Drive.  As Edwards and Hill approached an apartment building at 5636 South King Drive, they saw Steven Freeman, along with an unidentified woman, in front of the building.  Hill stopped Freeman and they engaged in conversation, while the woman entered the building.  Edwards continued walking north on King Drive.

Edwards testified that when he was about 25 or 30 feet beyond the apartment building, he heard a door open.  About three or four seconds later, he heard gunshots.  Edwards immediately ran towards the gas station, and, as he ran, felt a bullet graze his back.  Edwards continued running and never saw the individual who fired the gun at him.

Hill testified that, as he talked to Freeman, he noticed defendant in the front foyer of the apartment building, opening a door for the woman who accompanied Freeman.  He stated defendant had one hand on the door and one hand in his pant's pocket.  Hill described defendant's pocket as "bulging," but stated he did not see a gun.  Upon noticing defendant, Hill turned away from the building and began following Edwards, who was about 10 or 15 feet ahead on King Drive.  Hill indicated Freeman also turned from the building and followed a short distance behind him.

When Hill was about 40 feet from the apartment building, he heard a gun shot.  Hill immediately turned around and saw defendant in front of the building with his arms fully extended firing a handgun at him, Edwards, and Freeman.  As additional shots were fired, Hill heard Freeman and Edwards say they had been shot.  Hill ran east and ultimately met up with Edwards on the corner of King Drive and 56th Street.  After checking Edwards' wound, Hill saw Freeman jogging north on King Drive toward the gas station.  Hill and Edwards went to the gas station, and saw Freeman lying on the ground in front of the cashier window.  The police and an ambulance arrived a short time later.  After briefly talking with the police, Hill and Edwards left the gas station to tell Freeman's wife about her husband's condition.  Freeman was transported to Cook County Hospital, where he later died as a result of a gunshot wound to his lower back.

The defense rested without presenting evidence.  Following deliberations, the jury found defendant guilty of first-degree murder and two counts of aggravated discharge of a firearm.

At sentencing, the State presented two witnesses in aggravation.  Tyrone Harris, a member of the Gangster Disciple street gang, described an incident that occurred on January 19, 1996, at the 5636 South King Drive location in which he and a fellow gang member were shot by defendant as they were visiting a friend.
(footnote: 1)  In addition, Ronald Kimble, a Chicago police officer, stated he went to the 5636 South King Drive on February 18, 1996, and observed two men in front of the building.  According to Kimble, the two men tossed a bag of narcotics to the ground when they saw him and ran into the building.  Kimble followed the men to an apartment located on the third floor and, upon entry, saw defendant sitting on a bed.  When he asked defendant to stand, Kimble recovered a .45 semiautomatic handgun from where defendant was sitting.  Five or six more handguns, three boxes of ammunition of differing calibers, and a bullet proof vest were also recovered from the apartment.  The presentence investigation report, which was also presented by the State in aggravation, detailed defendant's criminal history as an adult, including felony convictions for possession of a stolen vehicle, violation of a bail bond, and unlawful use of weapons by a felon, and revealed his lengthy involvement as a member of the Mickey Cobras street gang.

In imposing sentence, the trial court noted defendant's gang involvement and stated defendant seemed to "enjoy" his affiliation with the Mickey Cobras.  The court further indicated defendant "committed one murder and shot two other people in the same location, has been convicted previously of gun violations and had another gun on a different occasion."  After simply finding defendant "a very dangerous person," the court imposed an extended-term sentence of 80 years' imprisonment for the murder conviction, noting defendant's sentence was a "hundred percent sentence."  The court also imposed a concurrent term of 30 years' imprisonment for the aggravated discharge of a firearm conviction.

II. ANALYSIS

A. 
Voir Dire

Defendant initially argues the trial court abused its discretion by conducting an insufficient 
voir dire 
examination of venireman Walter.  Defendant specifically asserts error in the trial court's failure to question Walter further concerning the affect of his police-related associations on his ability to be fair and impartial.  He claims the trial court's inadequate 
voir dire 
deprived him of his right to a trial by an impartial jury, and urges this court to reverse his convictions and remand for a new trial.

As the State correctly notes, defendant neither raised this point during jury selection nor in his post trial motion and, consequently, has waived this issue on appeal.  
People v. Enoch, 
122 Ill. 2d 176, 185-92, 522 N.E.2d 1124, 1129-30 (1988);
 People v. Martin, 
271 Ill. App. 3d 346, 354, 648 N.E.2d 992, 999 (1995).
  
Nevertheless, because this issue affects the constitutional right to a fair trial, we will consider defendant's contention under the plain error exception to the waiver rule.  See 134 Ill. 2d R. 615(a); 
People v. Boston, 
271 Ill. App. 3d 358, 360, 648 N.E.2d 1002, 1004 (1995).  

Both the federal (U.S. Const. Amends. VI, XIV) and state constitutions (Ill. Const. 1970, art. I, §8) guarantee a criminal defendant the right to a trial by an impartial jury.  
Boston, 
271 Ill. App. 3d at 360, 648 N.E.2d at 1004.  
Voir dire 
serves the dual purpose of 
enabling 
the trial court to select jurors who are free from bias or prejudice and of ensuring that counsels have an informed and intelligent basis on which to exercise their peremptory challenges.  
People v. Clark, 
278 Ill. App. 3d 996, 1003, 664 N.E.2d 146, 151 (1996).
  
The primary responsibility for both initiating and conducting 
voir dire 
lies with the trial court, and the manner and scope of that
 
examination rests within the court's sound discretion.  Supreme Court Rule 431 (134 ill. 2d R. 431); 
People v. Williams, 
164 Ill. 2d 1, 16, 645 N.E.2d 844, 850 (1994).
  
An abuse of that discretion will be found "only if, after review of the record, it is determined that the conduct of the court thwarted the selection of an impartial jury."  
Williams, 
164 Ill. 2d at 16-17, 645 N.E.2d at 850; 
People v. Johnson, 
276 Ill. App. 3d 656, 658, 659 N.E.2d 22, 24 (1995).  In evaluating the court's exercise of its discretion, the relevant inquiry is whether 
the 
questions and the procedures employed to gauge juror competency created a reasonable assurance that any prejudice or bias present would be discovered.
  Clark, 
279 Ill. App. 3d at 1003, 664 N.E.2d at 151.

Upon review of the record, we find the nature of the trial court's 
voir dire 
examination of venireman Walter was sufficient to ensure the selection of an impartial jury at defendant's trial.  The court admonished the venire, which included Walter, that defendant was presumed innocent and that this presumption could be overcome only by evidence presented by the State that showed defendant's guilt beyond a reasonable doubt.  Moreover, per the court's questioning, Walter explicitly stated he would follow the law and decide defendant's case based on the evidence presented.  An evaluation of the 
voir dire 
as a whole demonstrates the trial court's questioning was extensive enough to reveal any prejudice or bias on the part of Walter, if present, and did not, as defendant claims, impede the selection of an impartial jury.  

Furthermore, the burden of showing that a juror was partial rests on the party challenging the juror.  More than suspicion of bias must be demonstrated to show partiality.  
Boston, 
271 Ill. App. 3d at 360, 648 N.E.2d at 1004;  
People v. Cole, 
54 Ill. 2d 401, 413-15, 298 N.E.2d 705, 712-13 (1973). 

In 
People v. Collins, 
106 Ill. 2d 237, 478 N.E.2d 267 (1985), the defendants argued that they were denied a fair trial because one of the jurors was the wife of a judge who previously sentenced one of the defendants to prison.  Defense counsel possessed the defendant's conviction record which showed that the judge had sentenced one of the defendants to 12 to 36 years in prison.  The court held that the failure to challenge a juror for cause or by peremptory challenge waives any objection to that juror.  
Collins, 
106 Ill. 2d at 271, 478 N.E.2d at 282.  In 
People v. Ford, 
19 Ill. 2d 466, 475, 168 N.E.2d 33, 38 (1960) the court stated:  "We have frequently stated that a defendant, having failed to use his peremptory challenges, is in no position to complain concerning jury selections." 

The trial judge's determination in this case that juror Walter could be impartial was not against the manifest weight of the evidence and defendant was not denied a fair trial by his presence on the jury.  The defendant failed to meet his burden to show that juror Walter was partial.  

B. Ineffective Assistance of Counsel

In the alternative, defendant argues he was denied effective assistance of counsel at jury selection.  According to defendant, defense counsel erred by not (1) challenging Walter for cause, (2) exercising an available peremptory challenge, and (3) requesting further examination of Walter after he indicated his impartiality would be affected by certain personal relationships.  Defendant maintains these alleged errors are so egregious that this court can presume ineffective assistance pursuant to 
United States v. Cronic, 
466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984).

Initially, we note defendant's ineffective claims concerning counsel's failure to either challenge Walter for cause or to request further 
voir dire 
must fail because, on the record before us, we cannot fully evaluate the propriety of counsel's actions.  The record reveals, after addressing the venire as a group, the trial court examined the prospective jurors individually.  Walter was the fifth prospective juror questioned.  After examining another nine
 
individuals, the trial court recessed and conferred with the State's attorney and defense counsel outside the presence of the venire.  Upon its return, the court dismissed certain veniremembers.  The court repeated this process until a panel of jurors was selected and sworn.  Significantly, the record does not contain a transcript of the jury selection conference.  Where the appellate record is insufficient or fails to demonstrate the alleged error, the reviewing court must refrain from supposition and decide accordingly.  
People v. Jackson, 
145 Ill. 2d 43, 92, 582 N.E.2d 125, 148 (1991).  Absent the transcript, we cannot determine what challenges or requests, if any, were made by defense counsel and, thus, have no basis to measure counsel's effectiveness in these regards.  Accordingly, we need only determine whether counsel's failure to peremptory challenge Walter deprived defendant of his right to effective representation.  Notably, although the record does not reveal when or the number of peremptory challenges exercised by defense counsel during jury selection, we may reasonably assume since Walter was a member of the first group of prospective jurors questioned, defense counsel had a peremptory challenge available.

Generally, a defendant claiming ineffective assistance of counsel must satisfy the two-prong test articulated by the United States Supreme Court in 
Strickland v. Washington, 
466 U.S. 688, 80 L.Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by our supreme court in 
People v. Albanese, 
104 Ill. 2d 504, 526-27, 473 N.E.2d 1246, 1255-56 (1984).  Under the 
Strickland 
test
, 
a defendant must show (1) counsel made errors so serious, and his performance was so deficient, that he was not functioning as the "counsel" guaranteed under the sixth amendment of the United States Constitution, and (2) these deficiencies so prejudiced the defendant as to deprive him of a fair trial, a trial whose result is reliable.  466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  The Court, however, recognized the existence of "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  
United States v. Cronic, 
466 U.S. 648, 658, 80 L. Ed. 2d 657, 667, 104 S. Ct. 2039, 2046 (1984).  In such exceptional cases, the two-part 
Strickland 
test need not be met and ineffective assistance will be presumed.  
Cronic, 
466 U.S. 657-58, 80 L. Ed. 2d 666-67, 104 S. Ct. at 2046-47; 
People v. Foster, 
168 Ill. 2d 465, 481, 660 N.E.2d 951, 958 (1995).

In part, the 
Cronic 
Court specifically cited when a defendant is completely denied counsel at a critical stage of trial as an instance where the presumption is warranted.  466 U.S. at 659, 80 L. Ed. 2d 668, 104 S. Ct. at 2047.  Defendant, correctly noting jury selection is a critical stage of trial for constitutional purposes (
Gomez v. United States, 
490 U.S. 858, 873, 104 L. Ed. 2d 923, 937, 109 S. Ct. 2237, 2246 (1989), argues defense counsel's failure to respond to Walter's responses with a peremptory challenge constituted a denial of counsel.  The denial of counsel claimed by defendant here, however is not the type of denial contemplated by the Court in 
Cronic.  
In discussing this particular point, the 
Cronic 
Court indicated the presumption is applicable where counsel was either totally absent, or prevented from assisting the accused, during the critical stage of the proceeding.  466 U.S. 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047, n. 25.  Nothing in the record shows defendant was unrepresented at jury selection or was prevented legal assistance during that proceeding.  To the contrary,
 
the record shows defense counsel was present throughout the trial court's entire examination of the venire
.  
We find the cases cited by defendant unsupportive of his position (see 
Knight v. Texas, 
839 S.W.2d 505 (Tex. Ct. App. 1992); 
Missouri v. McKee, 
826 S.W.2d 26 (Mo. Ct. App. 1992); 
Presley v. Missouri, 
750 S.W.2d 602 (Mo. Ct. App. 1988), and therefore will not presume ineffective assistance in this case.  Since the 
Cronic 
presumption is inapplicable, defendant's claim will be examined under the traditional two-part test set forth in 
Strickland.  
See 
Foster, 
168 Ill. 2d at 482, 660 N.E.2d at 959.

T
he 
proper standard for attorney performance under the first prong of the 
Strickland 
test is that of "reasonably effective assistance."  
Strickland, 
466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  To establish counsel's performance as deficient, the defendant must show "counsel's representation fell below an objective standard of reasonableness."  
Strickland, 
466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  As stressed in 
Strickland, 
"judicial scrutiny of counsel's performance must be highly deferential."  466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.  Accordingly, counsel's performance is presumed to fall within the wide range of reasonable professional assistance.  
Strickland, 
466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.  Indeed, a defendant claiming ineffective assistance must overcome a strong presumption the challenged action of counsel was the product of sound trial strategy and not of incompetence.  
People v. Harris, 
129 Ill. 2d 123, 156, 544 N.E.2d 357, 371 (1989), citing 
Strickland, 
466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

This court has recognized that the decision whether to exercise an available peremptory challenge is often a strategic one.  
Martin, 
271 Ill. App. 3d at 354, 648 N.E.2d at 1000.  Walter was the fifth of 25 prospective jurors questioned.  His responses did not specifically reveal any identifiable bias or prejudice against defendant.  Defendant has simply failed to show that counsel's decision under the circumstances was not tactical and a matter of jury selection strategy.  Consequently, we cannot find defense counsel's decision not to peremptorily challenge Walter was objectively unreasonable.

Moreover, even assuming, 
arguendo, 
a deficiency on the part of defense counsel, defendant has not shown the requisite prejudice.  The prejudice prong of the 
Strickland 
test ordinarily requires the defendant to show "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  
Strickland, 
466 U.S. at 694, 80 L. Ed 2d at 698, 104 S. Ct. at 2068.  Where a defendant challenges his conviction, the question is whether a reasonable probability exists that, absent the alleged errors, the factfinder would have entertained a reasonable doubt of guilt.  
Strickland, 
466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  By failing to identify any clear bias or prejudice held by Walter against him, defendant has not demonstrated that the verdict would probably have been different if Walter had not served as a juror.  Based on the foregoing, we find defendant was not deprived of his constitutional right to effective assistance of counsel.

C. Extended-Term Sentence

Defendant next claims he is entitled to a new sentencing hearing on his murder conviction because the trial court erred by failing to articulate a basis for imposing his extended-term sentence.  As the State asserts, defendant has waived this issue by not raising it at the sentencing hearing or in a post-

sentencing motion.  730 ILCS 5/5-8-1(c); 
People v. Reed, 
177 Ill. 2d 389, 394, 686 N.E.2d 584, 585-86 (1997).  However, because this alleged error affects the fundamental right to liberty, and since defendant's claim has merit, we will review this challenge under the plain error doctrine.  134 Ill. 2d R. 615(a); 
People v. Askew, 
273 Ill. App. 3d 798, 806, 652 N.E.2d 1041, 1047 (1995).

Under section 5-8-1(a)(1)(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-1-1 
et seq. 
(West 1996)), a defendant convicted of first degree murder shall be sentenced to a term of not less than 20 years and not more than 60 years in prison.  730 ILCS 5/5-8-1(a)(1)(a) (West 1996).  The sentencing court may impose an extended-term of imprisonment of up to 100 years if it finds the existence of any aggravating factor specified in section 5-5-3.2(b) of the Code.  730 ILCS 5/5-8-

2(a)(1) (West 1996).  While the Code's requirement that the trial court set forth on the record its reasons for a particular sentence does not require it to recite every factor and set a value to each, the court must nevertheless enumerate its consideration of the requisite aggravating factors supporting the imposition of an extended-term sentence.  
People v. Moore, 
266 Ill. App. 3d 791, 799, 640 N.E.2d 1256, 1262 (1994); 
People v. McGhee, 
238 Ill. App. 3d 864, 883-83, 605 N.E.2d 1039, 1051-52 (1992).
  
The trial court in the instant matter erroneously failed to state its basis for defendant's sentence.  Notwithstanding this error, the State argues the record adequately supports the trial court's order.

According to the State, the trial court properly relied on section 5-5-3.2(b)(7) of the Code as an aggravating factor.  Reliance on section 5-5-3.2(b)(7) is proper when the defendant is convicted of first degree murder after having been previously convicted of any offense listed in paragraph (c)(2) of section 5-

5-3, where the murder conviction has occurred within 10 years of the previous conviction.  730 ILCS 5/5-5-3.2(b)(7) (West 1996).  The State specifically relies on paragraph (c)(2)(F) of section 5-5-3, which states:

"A period of probation, a term of periodic imprisonment or conditional discharge shall not be imposed for the following offenses.  The court shall sentence the offender to not less than the minimum term of imprisonment set forth in this Code for the following offenses, and may order a fine or restitution or both in conjunction with such term of imprisonment:

***

"(F) A Class 2 or greater felony if the offender had been convicted of a Class 2 or greater felony within 10 years of the date on which he committed the offense for which he is being sentenced."  730 ILCS 5/5-

5-3(c)(2)(F) (West 1996).

As the State notes, defendant received 30 months probation following a December 1989 conviction for possession of a stolen motor vehicle.  The State maintains defendant's conviction, as a Class 2 felony that occurred within 10 years of his present conviction for murder, supports defendant's eligibility for an extended-term sentence under section 5-8-2(a)(1) of the Code.  A review of the Code, however, reveals the State's analysis is flawed.

Upon review of the relevant sentencing provisions, a defendant may receive an enhanced sentence for first degree murder under section 5-5-3.2(b), when predicated upon paragraph (c)(2)(F) of section 5-5-3, where he has been previously sentenced to a minimum term of imprisonment for a conviction of a Class 2 or greater felony that occurred within 10 years of an earlier conviction for a Class 2 or greater felony.  Section 5-5-

3.2(b)(7) clearly provides that, before a defendant is eligible for an extended-term sentence pursuant to paragraph (c)(2)(F), he must have been sentenced to a 
term of imprisonment 
pursuant that provision.
  
(Emphasis added.)  730 ILCS 5/5-5-3(c)(2)(F); 
People v. Tainter, 
294 Ill. App. 3d 634, 646, 691 N.E.2d 55, 63 (1998).  Moreover, by its own terms, paragraph (c)(2)(F) requires a defendant to have more than one Class 2 or greater felony conviction before a minimum term of imprisonment is required.  Here, defendant could not have been subject to the provisions of section 5-5-3(c)(2).  Defendant 
received 
only probation for his possession conviction, not a minimum term of imprisonment, and the record reveals no other Class 2 or greater felony convictions within ten years of that offense.  As such, defendant's extended-

term sentence cannot be upheld under section 5-5-3(c)(2)(F) as contended by the State.

At oral argument, the State argued for the first time on appeal that defendant's enhanced sentence may stand because the offense in this case was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty.  730 ILCS 5/5-5-

3.2(b)(2) (West 1996).  Behavior is "brutal" if it is grossly ruthless, devoid of mercy or compassion, cruel and cold-blooded; "heinous" behavior is characterized by conduct that is hatefully or shockingly evil, grossly bad, enormously and flagrantly criminal.  
People v. Hartzol, 
222 Ill. App. 3d 631, 651, 584 N.E.2d 291, 306 (1991).  In evaluating the brutality or heinousness of the defendant's conduct, the trial court must evaluate all the circumstances surrounding the incident (
People v. Champs, 
273 Ill. App. 3d 502, 510, 652 N.E.2d 1184, 1191 (1995), and each case will rest upon its own facts.  
People v. Keller, 
267 Ill. App. 3d 602, 611, 641 N.E.2d 891, 897 (1994).  We stress the Code provisions providing for extended-term sentencing is not intended to enhance the punishment for every offense.
  People v. Andrews, 
132 Ill. 2d 451, 464, 548 N.E.2d 1025, 1031 (1989).  Indeed, an extended-term sentence under section 5-5-3.2(b)(2) is appropriate only where the defendant's conduct is 
exceptionally 
brutal or heinous.  
People v. Gonzalez, 
231 Ill. App. 3d 1071, 1079, 596 N.E.2d 783, 788 (1992).

Although callous and certainly unnecessary, defendant's behavior accompanying the shooting of Freeman is not the type of conduct the courts have determined to be brutal and heinous under section 5-5-3.2(b)(2).  See 
People v. Mangum, 
260 Ill. App. 3d 631, 636-37, 632 N.E.2d 1097, 1100-01 (1994) (stating brutal and heinous factor has been narrowly construed, and noting cases where such conduct has been found "frequently involve prolonged pain, torture, or premeditation"); 
Hartzol, 
222 Ill. App. 3d at 652-53, 584 N.E.2d at 306-07 (discussing numerous factors and circumstances in which courts have found brutal or heinous behavior).  Because the record does not justify the imposition of an extended-term sentence under the Code, we find defendant's sentence for murder was an abuse of the trial court's discretion.  See 
Andrews, 
132 Ill. 2d at 464, 548 N.E.2d at 1031 (applying abuse of discretion standard in determining whether defendant was eligible for enhanced sentence); 
Hartzol, 
222 Ill. App. 3d at 651, 584 N.E.2d at 306 (same).  Pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we vacate defendant's extended-term sentence and reduce his sentence to 60 years' imprisonment, the maximum for first degree murder.

D. Truth-In-Sentencing

At the sentencing hearing, the trial court indicated defendant's sentence for murder is "a hundred percent sentence," an obvious reference to the truth-in-sentencing provisions of section 3-6-3 of the Code (730 ILCS 5/3-6-3 
(West 
1996).  Section 3-6-3, which addresses
 
the rules and regulations for early release of prison inmates, is part of the original truth-in-

sentencing laws enacted by our General Assembly in Public Act 89-

404 (Pub.Act 89-404, §40, eff. August 20, 1995 (1995 Ill. Laws 4306, 4323-27)).  In relevant part, prior to the enactment of Public Act 89-404, a person convicted of first degree murder was eligible to receive one day of good-conduct credit for each day of service in prison.  See 730 ILCS 5/3-6-3(a)(2) (West 1994).  With the passage of Public Act 89-404, a person convicted of first degree murder may no longer receive good time credit, but is required to serve the entire sentence imposed by the court.  730 ILCS 5/3-6-3(a)(2)(i) (West 1996).  Per the trial court's sentencing order in this case, defendant thus must serve his entire sentence without the possibility of early release.

During the pendency of this appeal, our supreme court in 
People v. Reedy, 
Nos. 85191 and 85297 cons., slip opn. (January 22, 1999), considered the validity of Public Act 89-404 and the truth-in-sentencing law.  Upon an exhaustive analysis of the legislation, the court found Public Act 89-404 violated the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)), and as such was unconstitutional.  
Reedy, 
slip opn. at 7.
  
By virtue of the act's invalidity, the truth-in-

sentencing provisions codified by the act are not longer effective.  
Defendant 
is therefore entitled to be sentenced in accordance with the laws in effect before the enactment of Public Act 89-404.  Accordingly, defendant is eligible for day-to-day good-time credit as provided in section 3-6-3 prior to any truth-

in-sentencing amendments.  730 ILCS 5/3-6-3 (West 1994).

III. CONCLUSION

For the foregoing reasons, defendant's convictions for first degree murder and aggravated discharge of a firearm are affirmed.
  
Defendant's extended-term sentence pursuant to the murder conviction is vacated and reduced to the maximum term of 60 years' imprisonment.  We further amend the mittimus to reflect defendant's eligibility to receive good-conduct credit.

Affirmed in part, vacated in part, and modified.

CAHILL, P.J., and BURKE, J., concur.

FOOTNOTES
1:
Although a grand jury indictment was filed charging defendant with several criminal violations in connection with this incident, the State 
nolled
 these charges following imposition of sentence in this case.