2021 IL App (1st) 200013-U

No. 1-20-0013

Order filed December 23, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 CR 8291 |
| | ) | |
| JARVIS MOORE, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where: (1) no error occurred in admitting defendant's prior unlawful use of a weapon conviction to impeach his credibility at trial; (2) the trial court did not commit plain error by making incomplete Illinois Supreme Court Rule 431(b) inquiries during jury selection where the evidence was not closely balanced; and (3) defendant was not denied his constitutional right to the effective assistance of counsel.

¶ 2    Defendant Jarvis Moore was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7) (West 2018)) and sentenced to seven and a half years' imprisonment in the Illinois Department of Corrections.

¶ 3    On appeal, defendant alleges that: (1) his prior unlawful use of a weapon by a felon (UUWF) conviction was improperly used to impeach his credibility; (2) the trial court committed plain error by making incomplete Illinois Supreme Court Rule 431(b) inquiries during jury selection; and (3) he was denied the effective assistance of counsel.

¶ 4    Defendant filed a timely notice of appeal on November 5, 2019. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), Illinois Supreme Court Rule 603 (eff. Feb. 6, 2018), and Illinois Supreme Court Rule 606 (eff. March 12, 2021), governing criminal appeals.

¶ 5    For the reasons that follow, we affirm.[1]

¶ 6                                    I. BACKGROUND

¶ 7    Prior to trial, the State and defendant filed motions *in limine* pertaining to the admissibility of defendant's prior felony convictions pursuant to *People v. Montgomery*, 47 Ill. 2d 510 (1978). The court held a hearing to determine whether defendant's prior convictions for UUWF and possession of a controlled substance with intent to deliver (PCSI) were admissible to impeach his credibility as a witness at trial.

¶ 8    At the hearing, when defense counsel argued that "[t]he issue before the court is whether the probative value outweighs any prejudicial effect, but there is no doubt there is always

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

prejudicial effect," the trial court clarified that "undue prejudice is the evil." Defense counsel then focused on the UUWF charge, arguing that the nature of that charge "tips the scales."

¶ 9     Although defendant had three prior felony convictions that were arguably admissible under *Montgomery*, the State informed the trial court that it was only seeking admission of the prior UUWF and PCSI convictions. The State noted that while the jury would independently learn of these two prior convictions as they pertained to the charge of armed habitual criminal, they should be deemed admissible for the secondary purpose of impeaching defendant's credibility should he testify at trial. The State maintained that the prior felony convictions were admissible under *Montgomery* and that their admission would not be unduly prejudicial.

¶ 10     The trial court made the following findings:

> "THE COURT: Thank you.
>
> First of all, they're within the purview of the People of the State of Illinois versus Montgomery.
>
> Next, are they material and relevant? At this time unless Mr. Moore testifies, they're not material and relevant but if that condition precedent is fulfilled, we move onto the balancing state.
>
> At this time, I find that the unlawful use of a weapon by a felon felony and also the possession of a controlled substance with intent to deliver felonies are not overly prejudicial and they will be allowed in but only if that condition precedent is fulfilled that Mr. Moore testifies."

¶ 11     The State's case-in-chief began with the parties stipulating that defendant had two prior qualifying felony convictions. Next, the parties stipulated that videos taken from four body-worn

cameras in People's Exhibit No. 1 truly and accurately depicted the events recorded on May 18, 2019. The State then presented testimony from Officers Joseph Duplechin, Matthew Moore, and Fernando Moctezuma concerning the events that transpired that day.

¶ 12    At 2:30 p.m., Officers Duplechin, Moore, and Moctezuma were patrolling the 7th District in an unmarked police vehicle. It was raining outside at that time. Officer Moore was the driver, Officer Moctezuma was seated in the front passenger seat, and Officer Duplechin rode in the rear passenger seat. The officers wore civilian clothing along with bulletproof vests that displayed their name, unit of assignment, and badge number. The back of each vest also revealed the word "Police." All three officers were also equipped with body-worn cameras that day.

¶ 13    As the officers drove northbound on the 6100 block of South Laflin Street, they saw defendant walking northbound on the sidewalk. When defendant turned and looked at the officers, all three saw a bulge protruding from defendant's front waistband. Officer Moctezuma testified that it was raining so hard that the rain left an imprint of the bulge on defendant's shirt.

¶ 14    From his vehicle, Officer Moore attempted to conduct an investigatory stop of defendant and asked defendant what was protruding from underneath his shirt. In response, defendant took off running southbound on South Laflin Street. Officer Duplechin exited the police vehicle and chased defendant on foot. Officer Moore made a U-turn and followed Officer Duplechin.

¶ 15    Defendant ran eastbound down an alley north of 62nd Street, ran through a vacant lot, turned onto 62nd Street, and turned back onto South Laflin Street. Officer Duplechin communicated via police radio that defendant was "doubling back." Officer Duplechin testified that as he chased defendant, defendant ran with one hand in front of him. Officer Duplechin followed from a distance of between two to three house lengths away.

¶ 16    After defendant exited the alley and ran through the open lot to 62nd Street, he turned right onto South Laflin Street and continued running southbound. Officer Duplechin testified that defendant used his right hand to toss a firearm into a front yard at 6128 South Laflin Street. Upon seeing this, Officer Duplechin stopped pursuing defendant, entered the gate to the home, and found the loaded gun in a bush.

¶ 17    On cross-examination, Officer Duplechin admitted that he mistakenly testified that the address where he found the gun was 6128 South Laflin Street when the correct address was 6228 South Laflin Street. Defense counsel utilized the video from Officer Duplechin's body-worn camera to establish that Officer Duplechin lost sight of defendant at least three times while pursuing him. Officer Duplechin testified that he saw defendant assume a crouching position from approximately three houses away and toss the gun through the open house gate.

¶ 18    Defense counsel also used the body-worn camera video to question Officer Duplechin about six men depicted in the video who were "hanging out on that porch." Officer Duplechin testified that he did not believe that he knew any of the men on the porch and did not recall if he had any prior dealings with them.

¶ 19    The trial court ordered a sidebar when the State objected to defense counsel asking Officer Duplechin whether he had any prior dealings at 6228 South Laflin Street. The trial court then questioned defense counsel why he was asking about "stuff at the house." Defense counsel replied that he was "trying to establish that the firearm was there prior to my client running past that location." The trial court then ruled on the State's objection:

    "THE COURT: All right. State, the defense has a constitutional right to put

    on a defense. They also have a constitutional right to show that somebody else did

it. So this is the Defendant's constitutional right to say – or intimate that somebody else had that weapon, so it's proper."

¶ 20    Officer Duplechin then testified that he did not recall having any prior dealings at 6228 South Laflin Street. Officer Duplechin testified that this neighborhood was West Englewood, a known high crime area. As far as Officer Duplechin knew, the gun that he recovered was never tested for fingerprints or subjected to DNA testing.

¶ 21    In the meantime, when Officer Moctezuma heard Officer Duplechin's communication that defendant was "doubling back," he understood this to mean that defendant was heading back towards South Laflin Street. Officer Moctezuma exited the undercover vehicle and took up the foot chase to apprehend defendant. From a standing position of about 75 to 100 feet away, Officer Moctezuma saw Officer Duplechin chase defendant from the east side to the west side of South Laflin Street. Officer Moctezuma testified that he saw a gun in defendant's right hand. He was "very certain it was a firearm." Officer Moctezuma testified that he then saw defendant crouch down and throw the gun into some bushes.

¶ 22    On cross-examination, Officer Moctezuma admitted that his police report did not include the fact that he saw defendant crouching down. Defense counsel also established that the police vehicle did not have an in-car camera. Defense counsel cross-examined Officer Moctezuma with the aid of People's Exhibit No. 6 to show that multiple men were standing on the porch of 6228 South Laflin Street that afternoon. Officer Moctezuma admitted that he did not speak with any of the men or attempt to obtain their names or phone numbers. Furthermore, fingerprint processing was not requested because Officer Duplechin handled the firearm with his hands.

¶ 23    Officer Patrick Forbes also testified at trial. After receiving a radio call of a foot pursuit, Officer Forbes and his partner, Officer E.J. Domer, drove their squad car to 6237 South Justine

Avenue. At that location, Officer Forbes saw defendant running. Officers Forbes and Domer exited their vehicle and followed defendant. Officer Domer conducted an "emergency takedown" of defendant and arrested him. The arrest occurred about a half block away from where the gun was recovered at 6228 South Laflin Street. People's Exhibit No. 1 included a video recording of defendant's arrest.

¶ 24    After the trial court denied defendant's motion for a directed verdict, defendant testified on his own behalf. Defendant, who was 31 years old, resided in the Englewood neighborhood for over 20 years. Defendant admitted that he was a convicted felon, having previously pled guilty to possession of a controlled substance with intent to deliver and unlawful possession of a firearm by a felon. After his firearm conviction, defendant endeavored to avoid guns, violence, the "wrong crowd" and generally avoided trouble.

¶ 25    On May 18, 2019, at 2:30 p.m., as defendant was walking between Bishop Street and South Laflin Street, the police tried to stop him. The police drove past defendant in a detective car and asked him to "come here." Defendant "took off running" because he had an outstanding child support warrant and had a prior "bad encounter with the police." After defendant was arrested, he was later re-arrested by the Sheriff's Department for the outstanding child support warrant.

¶ 26    Defendant described the prior "bad encounter" that he experienced two weeks before his arrest on May 18, 2019. According to defendant, he was walking on Ashland Avenue when detectives stopped him, asked his name, and after searching him, placed him in their car and questioned him about other crimes that had occurred in the area. When defendant denied having any information, the detectives said they would "take me up the street." Defendant thought that the detectives would take him to the police station, but they drove past it and dropped him off two miles away, leaving him to make his way home.

¶ 27 Defendant denied that he possessed a gun on May 18, 2019, or that he threw a gun into the front yard of 6228 South Laflin Street on that day. Defendant first learned that he was being charged with a firearm offense when he arrived at the police station.

¶ 28 Defendant was familiar with the address of 6228 South Laflin Street, as he resided only a block and a half away. The house at 6228 South Laflin Street was the site of criminal activity, including drug sales and violence. Defendant testified that the police had been to that address in the past.

¶ 29 On cross-examination, defendant testified that during his previous encounter with the police, he worried about getting home alive from where he was dropped off because the neighborhood was rife with gang violence. Defendant admitted that he never reported this incident to anyone. Defendant ran away from the police on May 18, 2019, because he was afraid of the officers, who drove the same type of vehicle involved in the prior incident. The officers from the prior incident were not the officers whom defendant encountered on May 18, 2019.

¶ 30 The jury convicted defendant of being an armed habitual criminal. The trial court sentenced defendant to seven and a half years in the Illinois Department of Corrections.

¶ 31                                    II. ANALYSIS

¶ 32                        A. Admissibility of Defendant's Prior Unlawful Use
                                   of a Weapon by a Felon Conviction

¶ 33 In his first assignment of error, defendant alleges that the trial court failed to conduct a proper balancing test before allowing his prior UUWF conviction to be admitted against him to impeach his credibility.

¶ 34 The State disagrees, maintaining that *Montgomery* does not apply to this case, and even if it did, the trial court did not abuse its discretion in allowing the introduction of such evidence.

¶ 35 In *Montgomery*, our supreme court held that evidence of a witness's prior conviction is admissible to attack their credibility when: (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; (2) less than ten years elapsed from the date of the conviction of the prior crime or release of the witness from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516.

¶ 36 Under the third factor contained in the *Montgomery* test, the trial judge should consider, *inter alia*, the nature of the prior conviction, its recency and similarity to the present charge, other circumstances surrounding the prior conviction, and the length of the witness's criminal record. *People v. Atkinson*, 186 Ill. 2d 450, 456 (1999). No abuse of discretion will be found where the trial court's comments reflect that its ruling was made with an awareness of the *Montgomery* balancing test. *Id.* at 463. When an accused's defense rests on his trial testimony, his prior convictions will be crucial in measuring his credibility. *Id.* at 461-62.

¶ 37 The test articulated in *Montgomery* was codified in Rule 609, which provides:

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value

of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." Ill. R. Evid. 609 (eff. Jan. 1, 2011).

¶ 38     The State maintains that the *Montgomery* test has no application to this case because defendant's prior convictions were independently admissible to prove elements of the offense of armed habitual criminal. The State is correct.

¶ 39     In *People v. Hester*, 271 Ill. App. 3d 954, 955 (1995), the defendant was convicted of multiple counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 1992)). On appeal, he alleged that the prosecutor committed reversible error by urging the jury to consider the defendant's prior felony conviction as bearing on the credibility of his trial testimony. *Id.* at 958.

¶ 40     The appellate court found that the defendant's reliance on *Montgomery* was misplaced where the evidence of the defendant's prior conviction constituted an element of the offense. *Id*. at 959. In such circumstances, the court determined that an independent basis for admission of the prior conviction "trumps any *Montgomery* inquiry." *Id*. In rejecting the defendant's claim of error, the court held:

> "When a defendant testifies at his trial, the trial court has the discretion to admit the defendant's prior convictions for impeachment purposes pursuant to *Montgomery*. However, when that prior conviction constitutes an element of the charged offense, the prior conviction must also be considered by the jury substantively as evidence of his guilt. [Citation.] Accordingly, IPI Criminal 3d No. 3.13X correctly states that in such a case, the jury may consider the

defendant's prior conviction as substantive evidence toward an element of the offense as well as how it may affect his credibility." *Id*. at 960.

¶ 41    Illinois Pattern Jury Instructions, Criminal, No. 3.13X (approved Jan. 31, 2020) (hereinafter IPI Criminal No. 3.13X), in turn, provides:

"Ordinarily, evidence of a defendant's prior conviction of an offense may [be considered by you only as it may affect his believability as a witness and must] not be considered by you as evidence of his guilt of the offense with which he is charged.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of ___, you may [also] consider evidence of defendant's prior conviction of the offense of ___ [only] for the purpose of determining whether the State has proved that proposition."

¶ 42    The committee note that follows IPI Criminal No. 3.13X clarifies that this instruction should be given only when the defendant's previous conviction is an element of the charged offense and that the bracketed phrases are to be used when the defendant testifies at trial. Illinois Pattern Jury Instruction, Criminal, No. 3.13X, Committee Note (approved October 17, 2014). Further, the Committee Note states that:

"Accordingly, this instruction provides that when the defendant has been previously convicted of committing a prior offense and he testifies at his trial, evidence of his prior conviction is admissible as substantive evidence of the prior conviction and also as impeachment evidence against the defendant." *Id*.

¶ 43    Here, defendant's claim fails where his prior convictions were substantively admissible to prove an element of the offense of armed habitual criminal. *People v. Davis*, 405 Ill. App. 3d 585, 591 (2010). The charge of armed habitual criminal required the State to prove that defendant had two previous qualifying convictions. 720 ILCS 5/24-1.7(a) (West 2018). The State proved these prior qualifying convictions by stipulation of the parties. Further, IPI Criminal No. 3.13X was given with the bracketed phrases as a defense instruction.

¶ 44    We conclude that *Montgomery* has no application to this case where defendant's prior convictions were substantively admissible to prove an element of the offense of armed habitual criminal. Where defendant chose to testify, the State was not required to establish that the prior convictions were independently admissible to impeach his credibility.

¶ 45    Moreover, even if the State were required to make a separate showing of admissibility to use the prior convictions to impeach defendant's credibility, we would find no abuse of discretion on the trial court's part. A trial court's decision to admit evidence of prior convictions for impeachment purposes is reviewed under an abuse of discretion standard. *People v. Atkinson*, 186 Ill. 2d 450, 456 (1999). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). When the record demonstrates that the trial court applied the balancing test, a reviewing court may decline to find error even if the *Montgomery* standard is not expressly articulated. *People v. Mullins*, 242 Ill. 2d 1, 18 (2011).

¶ 46    Here, it was uncontested that defendant's prior convictions satisfied the first and second *Montgomery* factors. The only disagreement between the parties concerned the third factor: whether the probative value of such evidence was substantially outweighed by its prejudicial

impact. The record establishes that the trial court fully understood that it was required to conduct a balancing test before ruling on the admissibility of the evidence. In response to defense counsel's claim that "[t]he issue before the court is whether the probative value outweighs any prejudicial effect," the trial court clarified that "undue prejudice is the evil." The trial court then explicitly referenced the balancing test and made an express finding of fact that the prior felony convictions were "not overly prejudicial." We find no abuse of discretion in the trial court's ruling where the trial court both understood and applied the *Montgomery* balancing test in making its ruling.

¶ 47    Finally, we reject defendant's insinuation that the trial court's ruling prejudiced him because the State used the prior convictions for an improper purpose during its closing argument. Placed in context, the now-objected-to remarks consist of the following:

> "ASSISTANT STATE'S ATTORNEY: The defendant is not a victim of some huge coincidence. He is not some unlucky person. He is a victim of *his own choices. His choice to be possessing this gun after being a twice convicted felon.* He tried to outrun the police. He cannot outrun the law. He is guilty of being an armed habitual criminal." (Emphasis added.)

¶ 48    Defendant's reliance on these remarks to support his claim of error is forfeited where he interposed no objection to these remarks either when they were made or in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Henry*, 318 Ill. App. 3d 83, 85 (2001). Furthermore, these remarks were not improper. As has been previously discussed, where the prior felony convictions were admissible to prove an element of the offense, they could be relied on for that purpose and to challenge defendant's credibility. *Hester*, 271 Ill. App. 3d at 960. Defendant stipulated to the fact of his prior felony convictions and to the fact that they were qualifying prior

offenses under the Armed Habitual Criminal Act. Additionally, the record shows that IPI Criminal No. 3.13X was given at defendant's behest. Accordingly, the jury was instructed to consider the prior convictions for a proper dual purpose. In conclusion, we find no error in the admission of defendant's prior felony convictions in this case.

¶ 49       B. The Trial Court Did Not Commit Plain Error By Making Incomplete
Illinois Supreme Court Rule 431(b) Inquiries During Jury Selection
Where the Evidence, In This Case, Was Not Closely Balanced

¶ 50     Defendant next alleges that the trial court committed plain error by making incomplete inquiries to determine whether the jury understood and accepted the principle that defendant was not required to present any evidence under Illinois Supreme Court Rule 431(b). Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 51     The State concedes that the express requirements of Rule 431(b) were not followed but maintains that this claim was forfeited where not raised at trial. *Enoch*, 122 Ill. 2d at 186. The State also maintains that defendant has failed to show that the evidence, in this case, was closely balanced. We agree.

¶ 52     In reviewing a case involving a forfeited Rule 431(b) violation, we assess to determine if a clear or obvious error occurred, and our review of the matter is *de novo. People v. Birge*, 2021 IL 125644, ¶ 24.

¶ 53     Rule 431(b) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable

doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."
Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 54   In *People v. Thompson*, 238 Ill. 2d 598, 607 (2010), our supreme court held that the language of Rule 431(b) clearly and unambiguously requires the trial court to ask the prospective jurors whether they understand and accept the four principles outlined in the rule. Here, the parties agree that the trial court failed to adequately question the prospective jurors about the third principle under Rule 431(b) and that the defendant failed to raise this contention of error in the trial court. As such, the parties also agree that the defendant bears the burden of demonstrating that the evidence was closely balanced such that the error tipped the scales of justice against him. *Id*. at 611.

¶ 55   In determining whether the evidence produced at trial was closely balanced, we conduct a qualitative commonsense assessment of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 53. Here, the State's version of events was at odds with defendant's version. The State's case was supported by the testimony of multiple police officers who gave consistent accounts of what transpired on May 18, 2019. These accounts were corroborated by the videotapes from the body-worn camera videos that were admitted into evidence in People's Exhibit No. 1. Finally, the

testimony and videotape were consistent with and augmented by Officer Duplechin's recovery of the firearm at 6228 South Laflin Street.

¶ 56    Defendant's alternative version of events was unsupported by any evidence, and his two prior felony convictions impeached his credibility. In sum, defendant has failed to establish that the evidence was closely balanced in this case.

¶ 57    For the foregoing reasons, we find that defendant has failed to establish that the trial court committed plain error by making incomplete inquiries under Illinois Supreme Court Rule 431(b).

¶ 58                    C. Defendant Was Not Denied His Constitutional Right
                            to the Effective Assistance of Counsel

¶ 59    Finally, defendant posits two allegations of ineffective assistance of counsel. First, defendant alleges that trial counsel's failure to object to a portion of the video contained in People's Exhibit No. 1 and the still photographs from the video contained in People's Exhibit Nos. 6 and 7 resulted in the admission of improper hearsay evidence. Second, defendant alleges that trial counsel's failure to ask any questions during *voir dire* deprived him of his right to the effective assistance of counsel at a critical stage of the proceedings. For the reasons that follow, we reject both contentions of error.

¶ 60        1. Defendant Received Effective Assistance of Counsel Where Trial Counsel Made
                a Strategic Decision Not to Oppose the Introduction of the Video and Still
                    Photographs Taken From the Officers' Body-Worn Cameras

¶ 61    We first consider defendant's claim that he was denied the effective assistance of counsel where his attorney failed to object to the introduction of body-worn camera evidence in the form of both video and still images taken from that video that depicted two separate individuals pointing off into the distance from the porch of 6228 South Laflin Street. The crux of defendant's complaint

is that defense counsel's failure to object to the admission of this evidence resulted in the State using it in closing argument to defeat his sixth amendment right of confrontation. U.S. Const., amend. VI. Defendant's claim is based on remarks made during the following exchange:

"ASSISTANT STATE'S ATTORNEY: Any time a squad comes by he takes off like a shot. Ridiculous. Absolutely ridiculous.

Two reasons why the defendant ran but there is [*sic*] six reasons why Duplechin stopped. He is chasing – he said he chased him because he ran but then he is just going to stop. Those six guys on the porch – they are not running. They are standing right there. You know what else they are doing. They are pointing.

DEFENSE COUNSEL: Objection, Judge, that's hearsay.

THE COURT: Overruled. You introduced the –

DEFENSE COUNSEL: I did not.

THE COURT: Go ahead.

ASSISTANT STATE'S ATTORNEY: Pointing. First guy pointing. Second guy pointing. What are they pointing at? The gun that wasn't tossed in the yard. Ridiculous.

DEFENSE COUNSEL: Renew my objection Judge."

¶ 62    Claims of ineffective assistance of counsel are evaluated under the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Under *Strickland*, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687; *Albanese*, 104 Ill. 2d at

525. We can dispose of an ineffective assistance of counsel claim on either prong. *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 69.

¶ 63    We dispose of this claim on the first prong of *Strickland*, where the record in this matter reveals a solid display of sound trial strategy on the part of defense counsel. *People v. Williams*, 2020 IL App (1st) 162512, ¶ 100. To succeed on an ineffective assistance of counsel claim, a defendant must overcome the presumption that the challenged conduct might be considered sound trial strategy under the circumstances. *People v. Snowden*, 2011 IL App (1st) 092117, ¶ 70.

¶ 64    Not only were the body-worn camera videos admitted without objection; they were admitted by stipulation. For good reason, where from beginning to end, the video, and specifically, the portion of the video that depicted six individuals on the porch of 6228 South Laflin, was a focal point of defendant's theory of defense.

¶ 65    Beginning with his opening statement, defense counsel argued:

> "DEFENSE COUNSEL: This yard the State is talking about, on the porch of the yard where that house is, there were other individuals. The State isn't going to call a single one of those people to corroborate the testimony that you hear from the police officers who will testify in this case."

¶ 66    Trial counsel relied on the video during his cross-examination of Officer Duplechin to conclusively establish that the video did not show defendant in possession of a firearm and that Officer Duplechin lost sight of defendant on at least three occasions. Defense counsel also used the video to establish the presence of six men on the porch of 6228 South Laflin when Officer Duplechin entered the property by the open gate. Officer Duplechin testified that he did not know the names of any of the men and did not recall if he had any previous dealings with any of them.

¶ 67    When defense counsel asked whether Officer Duplechin had any familiarity with the address of 6228 South Laflin Street, the State objected. The trial court then asked defense counsel the purpose of this question. Defense counsel articulated the basis for his inquiry, "[b]ecause I'm trying to establish that the firearm was there prior to my client running past that location." In overruling the State's objection, the trial court recognized defendant's "constitutional right to put on a defense" and his "constitutional right to show that somebody else did it."

¶ 68    On cross-examination, defense counsel used People's Exhibit No. 6 to establish that Officer Moctezuma also did not interview any of the individuals standing on the porch or obtain their names or phone numbers.

¶ 69    Defendant's testimony was aligned with counsel's cross-examination of the police officers. Defendant denied throwing a gun into the front yard of 6228 South Laflin Street. Defendant testified that he lived a block and a half away from 6228 South Laflin Street for over 20 years and knew that drug sales, violence, and generally "bad stuff" took place at that address. Defendant testified that he previously saw police officers at that address.

¶ 70    Finally, in his closing argument, defense counsel repeatedly urged the jury to watch the video from the body-worn cameras when they deliberated and replayed the portion of the video that showed the six men on the porch. He did so to persuade the jury that Officer Duplechin did not stop at 6228 South Laflin Street because he saw defendant toss a firearm but to investigate the six individuals he observed on the porch. While replaying the video, defense counsel argued:

> "DEFENSE COUNSEL: Six reasons why Officer Duplechin entered that front yard. Reason one, reason two, reason three, four, five, and I believe there is a gentleman kind of seated on a bucket or something back there. Six reasons why

Officer Duplechin entered that front yard and why did Officer Duplechin feel that at that point in time he could stop pursuing Jarvis because he has been on the radio."

¶ 71    In direct response to these remarks, the State countered that two individuals depicted in the video could be seen pointing and implied that they were pointing to the location where defendant tossed the gun. The trial court correctly overruled defense counsel's hearsay objection to this remark where defense counsel's reliance on the video and still photograph "opened the door" to the State's response. *People v. Hudson*, 157 Ill. 2d 401, 444 (1993).

¶ 72    Beyond the State's isolated and targeted response to defense counsel's closing argument, we note that the State never attempted to use the video or the still photographs to inject hearsay into this case in their case-in-chief. No State witness testified about what, if anything, any of the men on the porch were observed doing. Furthermore, the video was admitted into evidence without audio. We do not believe that defense counsel's strategic decision to rely on the contents of the video and still photograph supports a claim of ineffective assistance of counsel simply because it resulted in the State offering a countervailing view of the same evidence.

¶ 73    In conclusion, the record in this case supports the conclusion that defense counsel made a deliberate, tactical decision to rely on the evidence derived from the body-worn cameras to support his theory of defense. Defense counsel's reliance on the video and still photographs was inextricably linked to his strategy of attempting to persuade the jury that defendant neither possessed nor threw a firearm on May 18, 2019. This well-executed strategy was consistent with defendant's testimony and fortified by the video and still photographs. The State's brief remarks during its rebuttal argument do not undermine defense counsel's legitimate tactical decision to rely on the video and still pictures to support defendant's defense theory. In conclusion, where

defendant has failed to satisfy the first prong of *Strickland*, his ineffective assistance of counsel claim fails.

¶ 74                          2. Defendant Was Not Denied the Effective Assistance of
                                   Counsel at a Critical Stage of the Proceedings

¶ 75    Defendant's second claim of ineffective assistance is based on his attorney's failure to ask any questions during *voir dire*. Defendant requests that we find such inaction *per se* prejudicial under *United States v. Cronic*, 466 U.S. 648 (1984). Alternatively, defendant maintains that trial counsel's failure to ask any questions during *voir dire* constituted ineffective assistance under *Strickland*. We reject both claims.

¶ 76                          i. General Principles Concerning *Voir Dire*

¶ 77    A defendant's constitutional right to a jury trial includes the right to an impartial jury. *People v. Rinehart*, 2012 IL 111719, ¶ 16. The purpose of *voir dire* is the selection of a jury free from bias or prejudice. *Id*. "The purpose of *voir dire* is to enable the trial court to select an impartial jury and to ensure that the attorneys have an informed and intelligent basis on which to exercise peremptory challenges." *People v. Clark*, 278 Ill. App. 3d 996, 1003 (1996).

¶ 78    The manner in which *voir dire* is conducted is controlled by Supreme Court Rule 431(a), which provides:

        "The court shall conduct *voir dire* examination of prospective jurors by
        putting to them questions it thinks appropriate, touching upon their qualifications
        to serve as jurors in the case at trial. The court may permit the parties to submit
        additional questions to it for further inquiry if it thinks they are appropriate and
        shall permit the parties to supplement the examination by such direct inquiry as the

court deems proper for a reasonable period of time depending upon the length of the examination by the court, the complexity of the case, and the nature of the charges. Questions shall not directly or indirectly concern matters of law or instructions. The court shall acquaint prospective jurors with the general duties and responsibilities of jurors." Ill. S. Ct. R. 431(a) (eff. July 1, 2012).

¶ 79                                          ii. Defendant's Claim That Prejudice Should Be
                                              Presumed Under *United States v. Cronic*

¶ 80    In *Cronic*, the Supreme Court discussed those limited circumstances where prejudice may be presumed when reviewing a defendant's ineffective assistance of counsel claim. *Cronic*, 466 U.S. at 659-61. Such circumstances include: (1) a complete denial of counsel; (2) where counsel fails to subject the State's case to meaningful adversarial testing; and (3) where counsel is called upon to render assistance where competent counsel very likely could not do so. *Id.* at 659-62.

¶ 81    In this case, defendant alleges the first form of *Cronic* error: the denial of counsel at a critical stage in the proceedings. *Id.* at 659. A complete denial of counsel occurs when counsel is totally absent or is prevented from assisting the accused during a critical stage of the proceeding. *Wright v. Van Patten*, 552 U.S. 120, 124-25 (2008).

¶ 82    While we agree with defendant that *voir dire* is a critical stage of the proceedings, *People v. Bean*, 137 Ill. 2d 65, 84 (1990), we reject his assertion that trial counsel's failure to ask any questions of the venire is fairly regarded as the complete denial of counsel during a critical stage of the proceedings such that prejudice is presumed. *People v. Wilson*, 303 Ill. App. 3d 1035 (1999). In *Wilson*, the defendant alleged that his attorney's failure to exercise a peremptory challenge constituted a denial of counsel under *Cronic*. *Id.* at 1044. The court rejected the defendant's claim

finding the presumption of prejudice inapplicable where the defendant was represented throughout the trial court's examination of the venire and the defendant was not prevented legal assistance during that proceeding. *Id.*

¶ 83    Our conclusion finds additional support in *People v. Metcalfe*, 202 Ill. 2d 544 (2002), and *People v. Manning*, 241 Ill. 2d 319 (2011). In *Metcalfe*, the defendant alleged that he was deprived of the assistance of counsel where his attorney failed to either move to excuse or exercise a peremptory challenge against an actually biased juror. *Metcalfe*, 202 Ill. 2d at 560. In contrast to this case, the defendant relied on the second form of *Cronic* error to support his claim that prejudice should be presumed, *i.e.*, defense counsel's failure to subject the State's case to meaningful adversarial testing.

¶ 84    The court found the presumption of prejudice inapplicable where the defendant did not contend that his attorney failed to oppose the prosecution throughout the entire *voir dire* proceeding. *Id.* at 561. The court noted that the defendant's allegation that defense counsel completely failed to test the prosecution's case during *voir dire* was negated by defense counsel's exercise of five peremptory challenges. *Id.*

¶ 85    In *Manning*, the defendant asked the court to reconsider its decision in *Metcalfe*, alleging that juror bias constitutes a structural error and must therefore be considered inherently prejudicial. *Manning*, 241 Ill. 2d at 329-30. The court rejected the defendant's request, observing that it "amounts to little more than an end run around *Cronic*." *Id.* at 333.

¶ 86    Defendant's attempt to portray *voir dire* as comprising two distinct processes, questioning potential jurors on the one hand and exercising challenges on the other, is irreconcilable with the holding in *Metcalfe*. Implicit in the court's finding is the recognition that *voir dire* is understood

to be a singular process. Under *Metcalfe*, trial counsel's exercise of challenges disables defendant from demonstrating a *complete* deprivation of his right to counsel during *voir dire*. As such, defendant's claim is only subject to review under *Strickland*. *Manning*, 241 Ill. 2d at 333. We now proceed to consider defendant's claim under that analysis.

¶ 87                           iii. Defendant's Alternative Claim of Ineffective
                              Assistance of Counsel Under *Strickland*

¶ 88    As was previously discussed, under *Strickland*, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687; *Albanese*, 104 Ill. 2d at 525. A defendant must overcome the strong presumption that the challenged inaction may have been the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 89    We reject defendant's claim that trial counsel's failure to ask any questions during *voir dire* should be regarded as deficient performance because it created a "link" between the prosecutor and the potential jurors and made them "naturally view the prosecutor and the court as being aligned together ***." Defendant's belief disregards the fundamental purpose of *voir dire*: securing an impartial jury. *People v. Peeples*, 155 Ill. 2d 422, 463 (1993). *Voir dire* must not be used "as a means of indoctrinating a jury or impaneling a jury with a particular predisposition." *People v. Bowel*, 111 Ill. 2d 58, 64 (1986). Additionally, questions tailored to the case's particular facts or designed to educate the jury about a particular legal theory are impermissible. *People v. Encalado*, 2018 IL 122059, ¶ 33.

¶ 90    We disagree with defendant that no possible strategic reason existed for defense counsel to refrain from asking questions during *voir dire*. The decision to question a potential juror on a particular subject is a matter of trial strategy. *People v. Fudge*, 332 Ill. App. 3d 1019, 1026 (2002).

Defendant's argument would essentially turn the presumption of competency on its head by creating a presumption of incompetence when a defense attorney fails to ask questions during *voir dire*. Such a presumption would run afoul of *Strickland*.

¶ 91 The defendant made a similar request for a new category of presumed incompetence in *People v. Penrod*, 316 Ill. App. 3d 713, 724 (2000). The appellate court rejected the defendant's claim that defense counsel's failure to make an opening statement should automatically satisfy *Strickland's* first prong.

¶ 92 Additionally, defendant's claim that the failure to ask questions during *voir dire* should be regarded as presumptively deficient performance cannot be reconciled with *People v. Garstecki*, 234 Ill. 2d 430, 445 (2009), where our supreme court held that a trial judge is not required to permit attorneys to directly question the entire venire in every case.

¶ 93 Here, defense counsel was obligated to ensure that defendant's right to an impartial and fair jury was protected. Defense counsel did just that where he exercised five peremptory challenges and made two challenges for cause, one of which was granted. We find that defense counsel's active participation in the *voir dire* process defeats defendant's claim of ineffective assistance of counsel under the first prong of *Strickland*.

¶ 94 Defendant has also failed to establish prejudice under the second prong of *Strickland*, where he merely alleges that the outcome of the trial would have differed had counsel asked questions during *voir dire*. We have no reason to believe that counsel's failure to ask questions during *voir dire* rendered the result of the trial unreliable or fundamentally unfair. *People v. Evans*, 209 Ill. 2d 194, 220 (2004). Nor has defendant established that the verdict would have differed had counsel asked questions during *voir dire*. *Wilson*, 303 Ill. App. 3d at 1045.

¶ 95    Finally, we find *People v. Sebby*, 2017 IL 119445, to be analytically distinguishable. *Sebby* concerns the analysis to be employed for considering a forfeited 431(b) claim, not the *Strickland* analysis that applies to ineffective assistance of counsel claims. In any event, as was previously noted concerning defendant's 431(b) claim, the evidence in this case was not closely balanced.

¶ 96    In conclusion, we reject defendant's claim that he was denied the effective assistance of counsel based on defense counsel's failure to ask any questions during *voir dire*.

¶ 97                                        III. CONCLUSION

¶ 98    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 99    Affirmed.